# FM MULTI-STRATEGY INVESTMENT FUND, L.P.

OFFERING OF LIMITED PARTNERSHIP INTERESTS

MINIMUM SUBSCRIPTION: $250,000

January 1, 2000

|  | TAB |
|---|---|
| Confidential Private Placement Memorandum | 1 |
| Agreement of Limited Partnership | 2 |
| Form of Subscription Agreement | 3 |

Memorandum Number _____

Issued To _____

# FM MULTI-STRATEGY INVESTMENT FUND, L.P.

## CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

**In connection with the Private
Placement of Limited Partnership Interests**

**General Partner**

**Family Management Corporation
477 Madison Avenue, 14th Floor
New York, New York 10022
Telephone Number:  (212) 872-9600
Facsimile Number:  (212) 758-4020**

**January 1, 2000**

PURSUANT TO RELIEF FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH THIS OFFERING TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION.  THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM.  CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
FM MULTI-STRATEGY INVESTMENT FUND L.P.
a Delaware Limited Partnership

Limited Partnership Interests

Minimum Subscription: $250,000


FM MULTI-STRATEGY INVESTMENT FUND, L.P., A DELAWARE LIMITED PARTNERSHIP (THE "PARTNERSHIP"), WAS ORGANIZED AS A LIMITED PARTNERSHIP ON MARCH 22, 1994.  THE PARTNERSHIP IS PRIVATELY OFFERING (THE "OFFERING") FOR SALE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") IN MINIMUM AMOUNTS OF $250,000 TO A LIMITED NUMBER OF ACCREDITED INVESTORS AS DEFINED IN REGULATION D UNDER THE SECURITIES ACT OF 1933 (THE "ACT").  THE PARTNERSHIP IS MANAGED BY ITS GENERAL PARTNER, FAMILY MANAGEMENT CORPORATION, A NEW YORK CORPORATION (THE "GENERAL PARTNER").  ADDITIONAL INFORMATION ABOUT THE GENERAL PARTNER IS CONTAINED IN THE SECTION OF THIS MEMORANDUM CAPTIONED "THE GENERAL PARTNER."

————————————

THIS OFFERING MEMORANDUM IS INTENDED FOR THE EXCLUSIVE USE OF THE PERSON TO WHICH IT IS ADDRESSED IN CONNECTION WITH THE OFFERING OF LIMITED PARTNERSHIP INTERESTS.  THE DISTRIBUTION, REPRODUCTION OR OTHER USE OF ALL OR ANY PORTION OF THIS CONFIDENTIAL DOCUMENT IS PROHIBITED.

PROSPECTIVE PURCHASERS OF INTERESTS SHOULD READ THIS CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM CAREFULLY BEFORE MAKING ANY INVESTMENT DECISION REGARDING THE PARTNERSHIP.  IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.  THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK AND MAY BE ILLIQUID.  NO ONE SHOULD INVEST WHO CANNOT AFFORD TO LOSE HIS ENTIRE INVESTMENT.  SEE "RISK FACTORS."

THE LIMITED PARTNERSHIP INTERESTS OFFERED HEREBY ARE BEING SOLD IN A PRIVATE PLACEMENT AND ACCORDINGLY HAVE NOT BEEN REGISTERED UNDER THE ACT OR REGISTERED OR QUALIFIED UNDER ANY STATE SECURITIES LAW AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON AN EXEMPTION FROM THE REGISTRATION AND QUALIFICATION REQUIREMENTS OF SUCH LAWS.  THE FURTHER SALE OR DISTRIBUTIONS OF LIMITED PARTNERSHIP INTERESTS WILL BE RESTRICTED AND THE INTERESTS MAY NOT BE SOLD OR OTHERWISE DISPOSED OF UNLESS THEY ARE SUBSEQUENTLY REGISTERED UNDER THE ACT AND ANY APPLICABLE STATE SECURITIES ACT OR AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.  THERE IS NO PUBLIC MARKET FOR THE INTERESTS AND NONE IS LIKELY TO DEVELOP.  BY REASON OF THE FOREGOING, PURCHASERS OF INTERESTS MAY HAVE TO HOLD THEIR INVESTMENT FOR AN INDEFINITE PERIOD OF TIME, SUBJECT TO ANY WITHDRAWAL RIGHTS PROVIDED BY THE PARTNERSHIP.  INVESTORS MAY NOT WITHDRAW ANY CAPITAL CONTRIBUTED TO THE PARTNERSHIP UNTIL AFTER SUCH CAPITAL HAS BEEN IN THE PARTNERSHIP FOR A PERIOD OF NOT LESS THAN ONE FULL YEAR, SUBJECT TO THE WITHDRAWAL RIGHTS PROVIDED BY THE PARTNERSHIP.  SEE "SUMMARY OF THE LIMITED PARTNERSHIP AGREEMENT - WITHDRAWALS".  THE PARTNERSHIP WILL BE UNDER NO OBLIGATION TO REGISTER THE INTERESTS UNDER THE ACT OR ANY STATE SECURITIES LAW OR TO COMPLY WITH ANY EXEMPTION UNDER THE ACT OR ANY STATE SECURITIES LAW.

THE LIMITED PARTNERSHIP INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO BUY, TO ANY PERSON WHO HAS NOT EXECUTED AND RETURNED A SUBSCRIPTION AGREEMENT IN FORM AND SUBSTANCE SATISFACTORY TO THE GENERAL PARTNER, AND WHOSE PURCHASER REPRESENTATIVE, IF ANY, HAS NOT COMPLETED AND RETURNED A PURCHASER REPRESENTATIVE QUESTIONNAIRE IN FORM AND SUBSTANCE SATISFACTORY TO THE GENERAL PARTNER.  THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER TO SELL, OR A SOLICITATION OF AN OFFER TO BUY A SECURITY IN ANY JURISDICTION OR TO ANY PERSON TO WHOM OR TO WHICH IT IS UNLAWFUL TO MAKE SUCH AN OFFER OR SOLICITATION IN SUCH JURISDICTION.  THIS OFFERING IS MADE ONLY TO A LIMITED NUMBER OF ACCREDITED INVESTORS, AS THAT TERM IS DEFINED IN REGULATION D UNDER THE ACT.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM AS INVESTMENT, TAX OR LEGAL ADVICE.  THIS MEMORANDUM AND THE OTHER DOCUMENTS DELIVERED IN CONNECTION HEREWITH SHOULD BE REVIEWED BY EACH PROSPECTIVE INVESTOR OR SUCH INVESTOR'S PURCHASER REPRESENTATIVE, IF ANY, AND SUCH INVESTOR'S FINANCIAL, TAX OR LEGAL COUNSEL.

THE INFORMATION CONTAINED HEREIN IS ACCURATE ONLY AS OF THE DATE OF THIS MEMORANDUM.  THE INFORMATION IS SUBJECT TO CHANGE AT ANY TIME.

ADDITIONAL INFORMATION IS AVAILABLE FROM FAMILY MANAGEMENT CORPORATION, WHOSE ADDRESS, TELEPHONE NUMBER AND FACSIMILE NUMBER ARE SET FORTH ON THE COVER PAGE HEREOF.

FOR ALABAMA RESIDENTS:

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER THE ALABAMA SECURITIES ACT.  A REGISTRATION STATEMENT RELATING TO THESE SECURITIES *HAS NOT BEEN FILED* WITH THE ALABAMA SECURITIES COMMISSION.  THE COMMISSION *DOES NOT* RECOMMEND OR ENDORSE THE PURCHASE OF ANY SECURITIES, *NOR DOES IT PASS UPON* THE ACCURACY OR COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

FOR ALASKA RESIDENTS:

THE SECURITIES OFFERED HAVE BEEN REGISTERED WITH THE ADMINISTRATOR OF SECURITIES OF THE STATE OF ALASKA UNDER PROVISIONS OF 3AAC 08.500-3 AAC 08.506.  THE INVESTOR IS ADVISED THAT THE ADMINISTRATOR HAS MADE ONLY A CURSORY REVIEW OF THE REGISTRATION STATEMENT AND HAS NOT REVIEWED THIS DOCUMENT SINCE THE DOCUMENT IS NOT REQUIRED TO BE FILED WITH THE ADMINISTRATOR. THE FACT OF REGISTRATION DOES NOT MEAN THAT THE ADMINISTRATOR HAS PASSED IN ANY WAY UPON THE MERITS, RECOMMENDED OR APPROVED THE SECURITIES.  ANY REPRESENTATION TO THE CONTRARY IS A VIOLATION OF AS 45.55.170.

THE INVESTOR MUST RELY ON THE INVESTOR'S OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED, IN MAKING AN INVESTMENT DECISION ON THESE SECURITIES.

FOR ARKANSAS RESIDENTS:

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER SECTION 23-42-504(a)(14) OF THE ARKANSAS SECURITIES ACT AND SECTION 4(2) OF THE SECURITIES ACT OF 1933.  A REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS NOT BEEN FILED WITH THE ARKANSAS SECURITIES DEPARTMENT OR WITH THE SECURITIES AND EXCHANGE COMMISSION.  NEITHER THE DEPARTMENT NOR THE COMMISSION HAS PASSED UPON THE VALUE OF THESE SECURITIES, MADE ANY RECOMMENDATIONS AS TO THEIR PURCHASE, APPROVED OR DISAPPROVED THE OFFERING, OR PASSED UPON THE ADEQUACY OR ACCURACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

FOR COLORADO RESIDENTS:

THIS INFORMATION IS DISTRIBUTED PURSUANT TO AN EXEMPTION FOR SMALL OFFERINGS UNDER THE RULES OF THE COLORADO SECURITIES DIVISION.  THE SECURITIES DIVISION HAS NEITHER REVIEWED OR APPROVED ITS FORM OR CONTENT.  THE SECURITIES DESCRIBED MAY ONLY BE PURCHASED BY "ACCREDITED INVESTORS" AS DEFINED BY RULE 501 OF SEC REGULATION D AND THE RULES OF THE COLORADO SECURITIES DIVISION.

FOR CONNECTICUT RESIDENTS:

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE BANKING COMMISSIONER OF THE STATE OF CONNECTICUT NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THIS OFFERING.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

FOR IDAHO RESIDENTS:

THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED OR THE SECURITIES LAWS OF CERTAIN STATES AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF THE ACT AND SUCH STATE LAWS.  THE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE

MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

FOR NEW HAMPSHIRE RESIDENTS:

NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENSE HAS BEEN FILED NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED CONSTITUTES A FINDING BY THE DIRECTOR THAT ANY DOCUMENT FILED UNDER THIS CHAPTER IS TRUE, COMPLETE AND NOT MISLEADING.  NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE DIRECTOR HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN APPROVAL TO, ANY PERSON, SECURITY, OR TRANSACTION.  IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER, OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS SECTION.

FOR NORTH CAROLINA RESIDENTS:

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.  INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

FOR PENNSYLVANIA RESIDENTS:

NEITHER THE PENNSYLVANIA SECURITIES COMMISSION NOR ANY OTHER AGENCY HAS PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING AND ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

EACH PENNSYLVANIA RESIDENT WHO SUBSCRIBES FOR AN INTEREST AGREES, BY SIGNING THE SUBSCRIPTION AGREEMENT, NOT TO SELL HIS INTEREST FOR A PERIOD OF TWELVE MONTHS AFTER THE DATE OF PURCHASE.

PURSUANT TO SECTION 207(M) OF THE PENNSYLVANIA SECURITIES ACT OF 1972 (THE "1972 ACT"), EACH PENNSYLVANIA RESIDENT WHO ACCEPTS AN OFFER TO PURCHASE SECURITIES EXEMPTED FROM REGISTRATION UNDER SECTION 203(d) OF THE 1972 ACT, DIRECTLY FROM AN ISSUER OR AN AFFILIATE OF AN ISSUER, SHALL HAVE THE RIGHT TO

WITHDRAW HIS OR HER ACCEPTANCE WITHOUT INCURRING ANY LIABILITY TO THE SELLER, UNDERWRITER (IF ANY), OR ANY OTHER PERSON, WITHIN TWO BUSINESS DAYS FROM THE DATE OF RECEIPT BY THE ISSUER OF A BINDING CONTRACT OF PURCHASE, OR IF THERE IS NO BINDING CONTRACT OF PURCHASE, AFTER PAYMENT FOR THE SECURITIES IS MADE.

FOR SOUTH CAROLINA RESIDENTS:

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER THE SOUTH CAROLINA UNIFORM SECURITIES ACT.  A REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS NOT BEEN FILED WITH THE SOUTH CAROLINA SECURITIES COMMISSIONER.  THE COMMISSIONER DOES NOT RECOMMEND OR ENDORSE THE PURCHASE OF ANY SECURITIES, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

FOR TENNESSEE RESIDENTS:

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.

THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.  INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISK OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

_____

     This Offering Memorandum should be read in conjunction with, the form of Agreement of Limited Partnership of FM Multi-Strategy Investment Fund, L.P., amended and restated as of January 1, 2000 (the "Partnership Agreement"), a copy of which is attached hereto.  Unless the context otherwise requires, all capitalized terms used in this Offering Memorandum without definition have the meanings assigned to them in the Partnership Agreement.

_____

# TABLE OF CONTENTS

SUMMARY ................................................................................................................... 1
INTRODUCTION ......................................................................................................... 8
THE PARTNERSHIP .................................................................................................... 8
THE GENERAL PARTNER .......................................................................................... 8
INVESTMENT OBJECTIVES AND POLICIES .......................................................... 10
INVESTMENTS AND STRATEGIES .......................................................................... 10
    Leverage .................................................................................................................. 11
    Hedging Techniques ................................................................................................ 11
RISK FACTORS ......................................................................................................... 12
OFFERING OF INTERESTS ...................................................................................... 17
CONFLICTS OF INTEREST ...................................................................................... 18
MATTERS RELATING TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF
1974............................................................................................................................. 19
    Acceptance of ERISA and IRA Investors ............................................................... 19
    Plan Assets ............................................................................................................. 20
    Obligations of Retirement Plan Partners; Indemnification ...................................... 20
RESTRICTIONS ON TRANSFER OR DISPOSITION OF PARTNERSHIP INTERESTS ........ 20
FEDERAL INCOME TAX CONSEQUENCES ............................................................. 21
    Classification as a Partnership ................................................................................ 21
    Taxation of Partners on Income or Losses of the Partnership ................................. 22
    Basis of Limited Partnership Interest ..................................................................... 22
    Limitations on Deduction of Losses ....................................................................... 22
    Limitation on Deductibility of Certain Expenses .................................................... 23
    Contributions ......................................................................................................... 23
    Distributions .......................................................................................................... 23
    Allocations of Income and Loss ............................................................................. 24
    Sale of an Interest or Withdrawal ........................................................................... 25
    Certain Partnership Transactions ............................................................................ 25
    Elections as to Basis Adjustments .......................................................................... 25
    Partnership Tax Returns; Audit .............................................................................. 26
    Tax-Exempt Investors ............................................................................................ 26
    State and Local Income Tax ................................................................................... 27
    IMPORTANCE OF OBTAINING PROFESSIONAL ADVICE ................................. 27
SUMMARY OF THE LIMITED PARTNERSHIP AGREEMENT ................................ 28
    Management ............................................................................................................ 28
    Limited Liability ..................................................................................................... 28
    Net Asset Value ...................................................................................................... 28
    Capital Accounts .................................................................................................... 28
    Compensation of the General Partner ..................................................................... 28
    Determination and Allocations of Gains and Losses ............................................... 29
Net Worth of General Partner ........................................................................................ 29
General Partner's Capital Contribution .......................................................................... 29
    Valuation of Partnership Securities ......................................................................... 29

Limitations on Withdrawals ............................................................................. 30
Dissolution of the Partnership ......................................................................... 30
Assignability of a Partner's Interest ............................................................... 30
Amendments to the Partnership Agreement ................................................... 30
NASD Free-Riding Rules ................................................................................ 31
Indemnification of General Partner ..................................................................... 31
Financial Reports .............................................................................................. 31
CUSTODIAN, COUNSEL AND AUDITOR ............................................................ 32
FISCAL YEAR ........................................................................................................... 32
EXPENSES .................................................................................................................. 32
Break-even Analysis ........................................................................................ 32
SELECTION OF BROKERS AND DEALERS ......................................................... 36
CONCLUSION ............................................................................................................ 37

CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

TO: Prospective Investors

DATED:  January 1, 2000

-------------------------------------------------------------------------------------------------

SUMMARY

Certain important aspects of the Offering are summarized below:

| | |
|---|---|
| The Partnership: | FM Multi-Strategy Investment Fund, L.P., a Delaware limited partnership. |
| General Partner: | Family Management Corporation, a New York corporation. |
| The Offering: | The offer for sale of Interests in the Partnership (the "Offering") is being made to a limited number of Accredited Investors, as that term is defined in Regulation D under the Securities Act of 1933 (the "Act").  Foreign persons may be admitted as limited partners.  Limited Partners may be admitted to the Partnership as of the beginning of each month. |
| Minimum Subscription: | The minimum initial subscription is $250,000 and subsequent investments must be in the amount of at least $100,000, in each case subject to modification at the discretion of the General Partner. |
| Investment Objectives, Strategies and Restrictions of the Partnership: | The Partnership will have an objective of maximizing total return consistent with the preservation of capital by allocating assets among various specialized investment advisers, not including the General Partner (the "Investment Advisers"), based upon the General Partner's evaluation of such Investment Advisers and relevant market conditions and economic trends.  The assets of the Partnership will be invested primarily in a portfolio of marketable debt and equity securities of U.S. issuers and of issuers in global and emerging markets.  The |

1

General Partner will seek to diversify the Partnership's portfolio by allocating assets to no fewer than three Investment Advisers. The portion of the Partnership's assets allocated to any single Investment Adviser will be limited to no greater than 33-1/3% of the Partnership's portfolio. The General Partner may, in its discretion, invest up to 60% of the Partnership's assets directly. The General Partner may from time to time in its sole discretion reallocate assets among Investment Advisers, select new Investment Advisers and terminate arrangements with existing Investment Advisers. The General Partner will monitor the performance of each Investment Adviser retained. Portfolio returns will consist of a combination of capital gains, interest and dividends. There can be no assurance that the Partnership's objectives will be achieved. The strategies employed by the Partnership's advisers may involve a high degree of risk. (See "RISK FACTORS.")

<u>Capital Contributions</u>:     Each Partner will contribute to the capital of the Partnership that Partner's subscription amount (the "Capital Contribution"). Capital must remain invested in the Partnership for at least one full year, subject to waiver of this requirement at the discretion of the General Partner. All contributions shall be made by wire transfer or other immediately available funds. Any Partner may make additional Capital Contributions on the first day of any calendar month, or at such other time or times as the General Partner may determine, in amounts at least equal to $100,000, subject to modification at the discretion of the General Partner.

Capital Accounts;
Partnership Percentages:

A separate capital account (a "Capital Account") will be established for each Partner on the books of the Partnership which shall be (i) credited with Capital Contributions made by that Partner and that Partner's share of the income and gains (including unrealized gains) of the Partnership and (ii) charged with all distributions to that Partner and that Partner's share of losses (including unrealized losses) and deductions of the Partnership including such Partner's share of fees payable to Investment Advisers retained on behalf of the Partnership, management fees payable to the General Partner, and other expenses of the Partnership.  (See "Compensation of General Partner" and "Expenses," below).  Each Partner will have a Partnership Percentage equal to the balance in his Capital Account divided by the sum of the Capital Accounts of all Partners.

Compensation of
General Partner:

In exchange for its services to the Partnership, the Partnership will pay the General Partner a management fee (the "Management Fee") computed at a rate of one percent (1%) per annum of the net value of the Partnership's assets.  The Management Fee is separately computed by reference and charged to the Capital Account of each Limited Partner quarterly in arrears. The General Partner is also entitled to an Incentive Allocation (see "Allocation of Net Gain and Net Loss" below).

In addition to the Management Fee, the General Partner shall be entitled to an Expense Allowance (see "Expenses," below).

Allocation of Net
Gain and Net Loss:

Net Gain and Net Loss will first be allocated among the Partners, including the General Partner, in accordance with their Partnership Percentages; then an amount equal to 10% of the Net Gain otherwise allocated to a Limited Partner's Capital Account for each fiscal year will be allocated to the General Partner, provided the Limited Partner has first received allocations of Net Gain during a fiscal year which exceed the sum of such Limited Partner's allocations of Net Loss and Management Fee

3

expense during such fiscal year.  This allocation is referred to as the "Incentive Allocation."

The Partnership will separately account for "hot issues," and the General Partner will not participate in gains derived therefrom.

Distributions:                The General Partner may from time to time make distributions to the Limited Partners in accordance with Partnership Percentages, but such distributions are not anticipated.

Withdrawals:                  A Limited Partner may generally withdraw an amount up to the balance of his Capital Account on the last Business Day in June and December of each Fiscal Year following the first anniversary of such Limited Partner's admission to the Partnership upon at least sixty (60) days' prior written notice to the General Partner.  Within fifteen (15) days after the effective date of withdrawal, a Limited Partner shall be entitled to payments from the Partnership in liquidation of his interest, in cash, cash equivalents or securities, in the discretion of the General Partner, in an amount equal to 90% of the amount being withdrawn or of the credit balance in his Capital Account if the entire Capital Account is being withdrawn, and the remaining balance of the Limited Partner's withdrawal or Capital Account, as the case may be,  shall be paid within forty-five (45) days after the effective date of withdrawal. The Capital Account of a Limited Partner withdrawing all or any portion of his capital is subject to a charge not to exceed 1% of his Capital Account to cover costs incurred by the Partnership in selling portfolio securities in order to effect the payment of the amount withdrawn.

Temporary Suspension
of Withdrawals:               Upon notice to the Limited Partners, the General Partner may temporarily suspend withdrawals as necessary to effect an orderly liquidation of the Partnership's assets to accomplish such withdrawals in full.  In the event the General Partner suspends withdrawals, a withdrawing Limited Partner will continue to participate in the Net Gains and Net Losses of the Partnership until the suspension is terminated.

Right of Redemption:    The Partnership shall have the right to redeem the entire interest of any Limited Partner at any time upon not less than thirty (30) days' prior written notice to the Limited Partner.

Admission of New
Limited Partners:    As of the first day of any calendar month (or at such other time or times as the General Partner may determine), the General Partner may accept subscriptions from and admit to the Partnership new Limited Partners.

Transfer of Limited
Partnership Interests:    A Limited Partner may not transfer its Interest without the prior written consent of the General Partner, and, thus, in general the only means of a Limited Partner's liquidating its interests is by withdrawing from the Partnership.  (See "Withdrawals," above).

Information to
Limited Partners:    Each Limited Partner will receive a quarterly financial report with respect to its investment in the Partnership.  It is anticipated that such reports will be distributed within approximately 45 days after the end of each of the first three Fiscal Quarters in each Fiscal Year and within approximately 75 days after the end of each Fiscal Year. The year-end report will include audited financial statements of the Partnership.  It is anticipated that within approximately 75 days following the end of the Fiscal Year, Limited Partners will receive the information necessary for preparation of their tax returns.

Use of Affiliated
Broker-Dealer:    The General Partner is affiliated with a registered broker-dealer.  Securities transactions for the Partnership may be effected by such broker-dealer.  (See "CONFLICTS OF INTEREST" below.)

Expenses:    The Partnership bears all (i) legal, bookkeeping, accounting and auditing expenses of the Partnership, (ii) fees to Investment Advisers retained on behalf of the Partnership, expected to be in the range of 1% to 2% of the value of assets allocated to the Investment Adviser, but which may be higher or lower, or may be based on a percentage of profits (for example, 20% of profits earned

5

on the portion of the Partnership's assets managed by the particular Investment Adviser), and (iii) expenses, not to exceed $75,000, associated with the organization of the Partnership and the offering and sale of interests in the Partnership.  Organizational expenses borne by the Partnership have been capitalized and are being amortized by the Partnership over a period of 60 months. The Partnership will also bear custodial fees, securities sales charges, brokerage expenses, margin fees, taxes and any other expenses incurred by the Partnership in connection with its activities.

In addition, to compensate the General Partner for overhead costs incurred in connection with its performance of its duties as General Partner, the Partnership will pay the General Partner an expense allowance (the "Expense Allowance") on the first day of each month in the amount of .0333% (i.e., 0.40% annually) of the sum of the Capital Accounts of the Partners.

The Partnership requires an annual return of approximately 1.43% during the current year of operations to break even.

Term of the Partnership:   The Partnership will terminate upon the earlier of an Event of Withdrawal of the General Partner in accordance with Delaware law, or the determination of the General Partner to terminate the Partnership upon at least 90 days' prior written notice to the Limited Partners.

Address and Telephone
and Facsimile Numbers
of Partnership:   The address, telephone and facsimile numbers appear on the cover page hereto.

Referral Fees:   The General Partner may pay referral fees, equal to a portion of its Management Fee, to individuals or entities which refer to the General Partner potential investors which ultimately acquire Interests in the Partnership. These payments do not change the fees payable by investors who are referred by such individuals or entities.

CFTC Disclosures:    While commodity trading is not the Partnership's principal activity, the Partnership meets the Commodity Futures Trading Commission ("CFTC") definition of a "commodity pool" because the Partnership will commit a portion of its assets to commodity trading through certain Investment Advisers and the purchase of interests in other commodity pools and is thus required by CFTC rules to furnish prospective investors with certain prescribed information.  The General Partner serves as commodity pool operator for the Partnership.  The Partnership is a multi-advisor pool as defined in CFTC regulation 4.10(d)(2).  The Partnership is continuously offered.  The General Partner has filed a claim of exemption on behalf of the Partnership under CFTC regulation 4.7(a).  The 4.7(a) exemption limits investors in the Partnership to Qualified Eligible Participants as defined in the regulation.

## INTRODUCTION

FM Multi-Strategy Investment Fund, L.P. (the "Partnership") is offering to sell limited partnership interests (the "Interests") to a limited number of qualified investors (the "Limited Partners").  The minimum purchase by any subscriber is $250,000, subject to modification at the discretion of the General Partner.  Limited Partners will be admitted to the Partnership as of the beginning of each month.  The investment objective of the Partnership is to maximize total return consistent with the preservation of capital.  There can be no assurance that this objective will be achieved.  To pursue this objective, the General Partner will allocate Partnership assets among various specialized Investment Advisers based upon the General Partner's evaluation of such advisers and relevant market conditions and economic trends.  The Partnership and its Investment Advisers may, if necessary or desirable, seek to enhance total return through the use of various strategies, which strategies may involve a high degree of risk, including, among other strategies, short selling, leverage, and purchasing and/or selling stock options and options on stock market indices, "hot issues," and securities of foreign issuers.  (See "INVESTMENTS AND STRATEGIES," below.)

This memorandum describes the Partnership, its investments and strategies, the Partnership Agreement, certain risks associated with the purchases of Interests and the terms on which such purchases may be made.

## THE PARTNERSHIP

The Partnership is a limited partnership formed under the laws of the State of Delaware on March 22, 1994.  The General Partner of the Partnership is Family Management Corporation.  Family Management Corporation also will act as an investment adviser to the Partnership, but will not receive a fee for such services apart from the fees otherwise payable to the General Partner.  (See "SUMMARY OF THE LIMITED PARTNERSHIP AGREEMENT, General Partner's Compensation," below).  The Partnership has broad authority under the Partnership Agreement to invest in securities in a manner consistent with its investment objective.  (See "INVESTMENTS AND STRATEGIES," below.)

## THE GENERAL PARTNER

Family Management Corporation ("Family Management" or the "General Partner") is the General Partner of the Partnership.  Family Management was organized as a corporation under the laws of the State of New York on May 5, 1988, and is registered with the United States Securities and Exchange Commission as an investment adviser.  It is also registered with the CFTC as a commodity pool operator and is a member of the National Futures Association.  Seymour W. Zises is the President of Family Management.

As General Partner, Family Management has sole authority to allocate assets

of the Partnership for investment by various specialized Investment Advisers and may, in its sole discretion, directly invest up to sixty percent (60%) of the assets of the Partnership itself. The General Partner has the authority to engage in a broad range of activities on behalf of the Partnership in connection with its investment of Partnership assets, including, but not limited to, entering into repurchase agreements, purchasing securities on margin and other leveraging techniques, and may authorize investment advisers retained on behalf of the Partnership to engage in such activities.  (See "INVESTMENTS AND STRATEGIES" and "RISK FACTORS" below.)

Seymour W. Zises is the President and Chief Executive Officer of the General Partner.  From September 1989 through June 1, 1998, Mr. Zises was affiliated with Nathan & Lewis Securities, Inc. (a broker-dealer) as a registered representative.  He is also currently President and Chief Executive Officer of Forest Hill Capital Corporation (an insurance brokerage firm) and Family Management Securities LLC (a broker-dealer and affiliate of the General Partner).  Prior to his founding the General Partner and Forest Hill Capital Corporation in 1989, he was an independent financial service representative licensed with Integrated Resources Equity Corporation (a broker-dealer).  Mr. Zises is a past director of Specialty Retail Group, Inc. (a specialty retail company) and a director of Disc Graphics (a packaging company).

Andrea L. Tessler is Senior Vice President of the General Partner.  She shares with Mr. Zises responsibility for the management of the Partnership's portfolio.  Since August 1989, Ms. Tessler has been Senior Vice President of Forest Hill Capital Corp. She is also Senior Vice President of Family Management Securities LLC.  Previously, Ms. Tessler was a registered representative of Nathan & Lewis Securities, Inc. as well as Integrated Resources Equity Corp. She has also held positions at Integrated Resources Inc. and E.F. Hutton and Company.

Marshall Kiev is Senior Vice President of the General Partner.  Since August 1989, he has been Senior Vice President of Forest Hill Capital.  Mr. Kiev is also associated with Family Management Securities LLC.  He was previously employed as a registered representative at Nathan & Lewis Securities, Inc. as well as Integrated Resources Equity Corp.

Mr. Zises, Ms. Tessler and Mr. Kiev are the officers of Family Management who will be responsible for the management of the Partnership's investments and activities. (See "CONFLICTS OF INTEREST" below.)  Mr. Zises, Ms. Tessler, and Mr. Kiev own all of the outstanding common stock of Family Management.

As of September 30, 1999, the aggregate holdings of the principals of the General Partner were less than 2% of the total Capital Account balances of the Partnership.

## INVESTMENT OBJECTIVES AND POLICIES

The Partnership's investment objective is to maximize total return, comprised of income and capital appreciation, to the Limited Partners, while seeking to limit risk and volatility through diversification of investment and investment strategies.  To achieve that objective, the Partnership will allocate its assets among various specialized Investment Advisers each of which will manage the funds allocated thereto.  The Partnership will seek to engage a variety of managers in order to create a portfolio with lower risk, i.e., a portfolio with lower volatility than that of any individual Investment Adviser.  In order to ensure diversity of investments, no Investment Adviser will be allocated greater than 33-1/3% of the Partnership's portfolio.  The General Partner itself may invest up to 60% of the Partnership's portfolio directly.  There can be no assurance that the Partnership will achieve its objective, and the investment strategies employed by the Investment Advisers and the General Partner may involve a high degree of risk.  See "RISK FACTORS."

## INVESTMENTS AND STRATEGIES

The Partnership will invest primarily in marketable debt and equity securities of U.S. issuers, and of issuers in global and emerging markets, although it may invest a portion of its portfolio in illiquid securities.  Up to 10% of the Partnership's portfolio may be invested in illiquid securities.  The Partnership also may invest in investment companies, including open-end regulated investment companies, and investment partnerships.  In such cases, the investment adviser of the investment company or investment partnership will be considered to be an Investment Adviser of the Partnership for determining whether the diversification requirements discussed above are satisfied.

The following are among the strategies and investments that the Investment Advisers may utilize:  (i) statistical arbitrage, (ii) short selling, (iii) government bond trading, (iv) investing in distressed securities of issuers in bankruptcy, reorganizations and workouts, (v) investing in high-yield securities, (vi) hot issue investing, see "SUMMARY OF THE LIMITED PARTNERSHIP AGREEMENT - NASD-Free Riding Rules," (vii) risk arbitrage, (viii) investing in foreign securities, (ix) investing in securities of small-cap companies, and (x) trading in commodity interests.  The Partnership may leverage its investment in such instruments (see "Leverage," below) and may hedge against risk, if deemed necessary or desirable (see "Hedging Techniques," below).  The Partnership's securities investments may be undertaken on exchanges or over-the-counter, in the United States and subject to state, federal or self-regulatory jurisdiction, or outside the United States and not subject to such jurisdiction.  There are no restrictions on investments other than those noted in this section. In addition, certain of the Investment Advisers may employ futures and options on futures for hedging and risk management purposes.  Such Investment Advisers are expected to employ primarily futures and options on futures on security indices, interest rates and currencies. The Partnership intends to trade in commodity interests through individual accounts managed by Investment Advisers and investments in other collective investment pools.  For information

on the risks associated with these strategies, see "RISK FACTORS."  This list is not intended to be all inclusive, and from time to time the Investment Advisers may employ strategies not enumerated above.  Such strategies may involve specific risks not discussed herein.

Leverage

      The Partnership may borrow to purchase investments, including by means of margin transactions.  In a margin transaction, securities are purchased pursuant to a loan.  The lender (e.g., a broker) holds the securities as collateral and charges interest on the loan.  In addition, in the event that the value of securities purchased on margin decreases, a margin maintenance call may be issued.  In such a situation, the Partnership would have to either liquidate the securities or deposit additional securities or cash with the lender in order to either reduce its debit balance or increase its equity so that the collateral will reach the percentage required by the lender.

      The Partnership will engage in borrowing only when the yield expected from portfolio securities exceeds the interest rate that the Partnership would pay on the borrowing.  To the extent that the total return on portfolio securities purchased with borrowed funds exceeds the interest rate paid on borrowings, the use of leverage will increase the Partnership's return on portfolio holdings.  However, the use of leverage will also increase any potential loss on a given investment just as it increases any potential profit.

      As stated above, the Partnership may invest in other pooled investment vehicles.  In such cases, the underlying pool may employ leverage and the effect will the same as if the Partnership had borrowed directly.

Hedging Techniques

      The General Partner or an Investment Adviser from time to time may employ hedging techniques whereby investments will be made in an effort to offset exposure to a particular source of risk.  The various hedging techniques may include, but are not necessarily limited to, the purchase, sale and writing of stock options and options on stock market indices.  Hedging is a means of offsetting, or neutralizing, the price movement of an investment by making another investment, the price of which should tend to move in the opposite direction from the original investment.  The imperfect correlation in price movement between a security and an investment purchased as a hedge for that security may limit the effectiveness of the hedging strategy.

# RISK FACTORS

An investment in the Partnership involves a high degree of risk.  Accordingly, an investment in the Partnership is suitable only for persons of adequate financial means who have no need for liquidity with respect to their investment and who can bear the economic risk, including the possible complete loss of their investment.  Among the factors which should be carefully considered prior to the purchase of a Limited Partnership Interest are:

1.  <u>Periods of Investment Concentration</u> - Because of the Partnership's trading methods and strategies, the Partnership may at times have an unusually high concentration in certain types of positions.  Such lack of diversification could result in greater losses than otherwise might be anticipated.  Accordingly, the investment portfolio of the Partnership may be subject to more rapid change in value then would be the case if the Partnership were required to maintain a wide diversification among companies, securities and types of securities.

2.  <u>Leverage and Short Selling</u> - The Partnership may from time to time engage in short selling.  Selling securities short runs the risk of losing an amount greater than the amount invested.  Short selling is subject to theoretically unlimited risk of loss because there is no limit on how much the price of the stock may appreciate before the short position is closed out.  A short sale may result in a sudden and substantial loss if, for example, an acquisition proposal is made for the subject company at a substantial premium over market price.  Furthermore, the Partnership at times will trade securities on a leveraged basis, *i.e.*, where the security can be purchased by putting up only a portion of the instrument's face value and borrowing the remainder (margin).  As a result, a relatively small price movement in a security may result in immediate and substantial losses to the Partnership.  In addition, trading on margin will result in interest charges to the Partnership which may be substantial.  Leveraged investments, including any purchase or sale of securities on margin, may result in losses in excess of the amount invested.

3.  <u>Trading in Distressed Securities and Highly Leveraged Companies</u> - The General Partner may engage Investment Advisers whose investment strategies entail investments in distressed securities and highly leveraged companies.  An investment in these types of securities and companies, by the nature of their leveraged capital structure, will involve a high degree of financial risk.  Such risks include, but are not limited to, the following:  (a) difficulty in identifying attractive investment opportunities; (b) subordination to substantial amounts of senior indebtedness, all or a significant portion of which may be secured; (c) the possibility of substantial changes in rights and covenants which could result in less protection for the Partnership with respect to securities purchased in proceedings under Chapter 11 of the U.S. Bankruptcy Code; and (d) the lack of regulation of the OTC Market (in which distressed securities often are traded) by any exchange, and the lack of any established market-making, margin or other requirements that would help to insure a viable trading market exists for a particular security.

4.  <u>Illiquidity of Markets</u> - At various times, the markets for securities interests purchased

12

or sold by the Partnership may be "thin" or illiquid, making purchase or sale of securities at desired prices or in desired quantities difficult or impossible. For example, securities exchanges and the SEC have authority to suspend trading in a particular security without notice.  In addition, the Partnership may invest in private placements of securities that are not registered under the Act and may have little or no trading market.

5.      Investing in Illiquid Securities - The Partnership may from time to time invest in unregistered securities of public companies and at times in the securities of private companies, including without limitation, limited partnerships, the securities of which may be, and often are, illiquid.  While no more than 10% of the Partnership's portfolio may be invested in illiquid securities, the Partnership may be forced to hold a larger cash reserve than normal as a precaution in the event of a large number of withdrawal requests by Limited Partners within a short period of time.

6.      Arbitrage Trading - The Partnership's trading operations may involve arbitraging between a security and its announced buy-out price or other forms of "risk arbitrage",  for example, between two securities, between the equity and equity options markets, and/or any combination of the above.  This means, for example, that the Partnership may purchase (or sell) securities interests (*i.e.*, on a current basis) and take offsetting positions in the options market in the same or related securities interests.  To the extent the price relationships between such positions remain constant, no gain or loss on the positions will occur.  These offsetting positions entail substantial risk that the price differential could change unfavorably causing a loss to the position.

7.      Trading of Securities Options - If the Partnership buys an option (either to sell or purchase a security) it will pay a "premium" representing the market value of the option. Unless the price of the security underlying the option changes and it becomes profitable to exercise or offset the option before it expires, the Partnership may lose the entire amount of the premium.  Conversely, if the Partnership sells an option (either to sell or purchase a security), it will be credited with the premium but will have to deposit margin or collateral due to its contingent liability to take or deliver the securities interest underlying the option in the event the option is exercised.  Traders who sell options are subject to the entire loss which occurs in the underlying security (less any premium received).  The writing or purchasing of an option runs the risk of losing the entire investment or substantially more than the entire investment, thereby causing significant losses to the Partnership in a relatively short period of time.  The ability to trade in or exercise options also may be restricted in the event that trading in the underlying security becomes restricted.  Options trading may also be illiquid in the event the General Partner or an Investment Adviser invests in contracts with extended expirations.

8.      Investment in Small Companies - There is no limitation on the size or operating experience of the companies in which the Partnership may invest.  Some small companies in which the Partnership  may invest may lack management depth or the ability to generate internally or obtain externally the funds necessary for growth.  Companies with new products

or services could sustain significant losses if projected markets do not materialize. Further, such companies may have, or may develop, only a regional market for products or services and may be adversely affected by purely local events. Such companies may be small factors in their industries and may face intense competition from larger companies and entail a greater risk than investment in larger companies.

9.      Foreign Securities - Changes in foreign exchange rates will affect the value of those securities which are denominated or quoted in currencies other than the U.S. dollar. Investments in foreign securities involve other risks that differ from investments in securities of domestics issuer. Such risks may include future political and economic developments, the possible imposition of foreign withholding taxes, possible seizure or nationalization of assets, the possible establishment of exchange controls or the adoption of other foreign governmental restrictions which might adversely affect the Partnership's investments. Investing in the equity and fixed-income markets of developing countries involves exposure to economies that are generally less diverse and mature, and to political systems which may be less stable, than those of developed countries. Foreign securities often trade with less frequency and volume than domestic securities and therefore may exhibit greater price volatility.

10.     Repurchase and Reverse Repurchase Agreements. In a repurchase transaction, the Partnership purchases a security from a bank or a securities dealer and simultaneously agrees to resell that security to the bank or broker-dealer at an agreed-upon price on an agreed-upon date. The resale price reflect the purchase price plus an agreed-upon rate of interest. In effect, the obligation of the seller to repay the agreed-upon price is secured by the value of the underlying security, which must at least equal the repurchase price. Repurchase agreements could involve certain risks in the event of default or insolvency of the other party, including possible delays or restrictions upon the Partnership's ability to dispose of the underlying securities.

In a reverse repurchase transaction, it is the Partnership, rather than the other party to the transaction, which sells the security and simultaneously agrees to repurchase it at a price reflecting an agreed-upon rate of interest. Reverse repurchase agreements may increase the Partnership's opportunity for gain and risk of loss for a given fluctuation in the value of the Partnership's assets. There may also be risks of delay in recovery and in some cases even loss of rights in the underlying security, should the opposite party fail financially.

11.     Securities Lending - Consistent with its investment objective and policies, the Partnership may lend its portfolio securities in order to realize additional income. Any such loan will be continuously secured by collateral at least equal in value to the value of the securities loaned. The risk of loss on such transactions is mitigated because, if a borrower were to default, the collateral should satisfy the obligation. However, as with other extensions of secured credit, loans of portfolio securities involve some risk of loss of rights in the collateral should the borrower fail financially.

12.    <u>Speculative Investment Program And No Current Income</u> - The Partnership's investment program should be considered speculative, as there can be no assurance that the General Partner's assessments of the short-term or long-term prospects of various investment strategies, Investment Advisers or investments will generate a profit.  The Partnership's investment strategies will vary as new Investment Advisers are employed, and Investment Advisers may employ strategies or instruments other than those discussed in this offering memorandum and which involve risks other than those discussed herein.  In view of the fact that the Partnership likely will not make distributions, an investment in the Partnership is not suitable for investors seeking current income.

13.    <u>Limited Partnership Interests Are Not Liquid</u>.  A Limited Partner has the right to withdraw his investment only at the end of each June and December after such investment has remained in the Partnership for a period of one full year.  The Partnership may temporarily suspend this right of withdrawal as necessary to effect an orderly liquidation of the Partnership's assets necessary to give effect to such withdrawals in full.  Some of the securities comprising the Partnership's portfolio are illiquid and will be more difficult to convert into cash, thereby potentially prolonging the suspension period.  There is no public market for the Interests, and it is not anticipated that a public market for the Interests will develop.  In addition, the Interests are subject to restrictions on transfer or resale imposed by the Partnership Agreement and federal and state securities laws.

14.    <u>Commodity Trading</u>.  Commodity futures markets are highly volatile and are influenced by factors such as changing supply and demand relationships, governmental programs and policies, national and international political and economic events and changes in interest rates.  In addition, because of the low margin deposits normally required in commodity futures trading, a high degree of leverage is typical of a commodity futures trading account.  As a result, a relatively small price movement in a commodity futures contract may result in substantial losses to the trader.  Moreover, commodity futures positions are marked to the market each day and variation margin payments must be paid to or by a trader.  Commodity futures trading may also be illiquid, and certain commodity exchanges do not permit trading in particular commodities at prices that represent a fluctuation in price during a single day's trading beyond certain set limits.  If prices fluctuate during a single day's trading beyond those limits -- which conditions have in the past sometimes lasted for several days with respect to certain contracts -- the Partnership could be prevented from promptly liquidating unfavorable positions and thus be subjected to substantial losses.  In addition, the CFTC and various exchanges impose speculative position limits on the number of positions that the Partnership may indirectly hold or control in particular commodities.

The Partnership intends to invest in commodity interests solely through investments in other Investment Advisers, some of which will manage the Fund's assets in collective investment pools.  Multi-investee-fund and adviser structures generally involve more complex fee structures than other pools and their profit potential may be adversely affected as a result of the potential for the Partnership to maintain offsetting positions in the separate trading accounts of various Investment Advisers.

15.     Principal Transactions.  To the extent that principal transactions are engaged in, including, but not limited to, swaps, forward foreign currency transactions and bonds, the investor must rely on the creditworthiness of a counterparty.

16.     Fees and Expenses.  The fees and expenses payable by the Partnership may be higher than fees and expenses of other investment funds.

17.     Incentive Allocation.  The special allocation of 10% of Net Gain to the General Partner may create an incentive for the General Partner to make investments that are riskier or more speculative than would be the case in the absence of such Incentive Allocation.

18.     Federal Income Tax Status.  If, as the result of changes in the law or the manner in which the Partnership is operated, the Internal Revenue Service ("IRS") were to successfully take the position that the Partnership is an association rather than a partnership, Partnership income would be taxed at the Partnership level at corporate tax rates and Partnership distributions, if any, and partial withdrawals could be treated as dividends, among other consequences.

19.     Taxable Income Without Distributions.  As partners in a partnership, the Limited Partners will recognize their allocable shares of taxable income or loss from the Partnership, without regard to the fact that the Partnership does not anticipate making corresponding distributions.  Thus, unless withdrawals are made, Limited Partners may have to rely upon resources independent of their Interests to pay their obligations to the federal, state and local tax authorities.

20.     Reliance on the General Partner and the Investment Advisers.  Limited Partners have no right to participate in the management of the Partnership or to make any decisions with respect to the investments to be made by the Partnership.  Consequently, Limited Partners must rely on the General Partner and the Investment Advisers retained by the General Partner on behalf of the Partnership with respect to the management  and investment decisions of the Partnership.  In the event that Family Management cannot, or determines not to continue as General Partner, the Partnership will dissolve.  If Family Management assigns its interest in the Partnership the Partnership would continue under the management of an entity or person with whom the Partners have had no prior relationship.  Additionally, Investment Advisers are retained by the General Partner without notice to or the prior approval of the Limited Partners.  Accordingly, prior to the time that a Limited Partner makes an investment in the Partnership, it will not know which Investment Advisers will be directly responsible for management of Partnership assets, or the fees which will be charged thereby.

21.     Certain Federal Securities Law Considerations.  The Partnership is not registered as an investment company under the Investment Company Act of 1940, as amended (the "ICA") pursuant to an exception provided by the ICA.  Therefore, the Partnership will not be subject to the requirements imposed by the ICA on registered investment companies, which include

restrictions on transactions between an investment company and its adviser or other affiliates, and on borrowing and the use of leverage.  In addition, shareholders of a registered investment company have private rights of action under the ICA against the company's adviser or other affiliates for (a) breaches of fiduciary duty involving personal misconduct, and (b) breaches of fiduciary duty involving the receipt of compensation or other material payments from the company.  These remedies under the ICA may not be available to investors in the Partnership.  The General Partner is registered under, and is subject to the antifraud provisions of the Investment Advisers Act of 1940, as amended (the "IAA"), and has fiduciary obligations to deal fairly and honestly in its relationship with the Partnership and the Limited Partners.

22.    Unrelated Business Taxable Income.  Because the Partnership may utilize leverage as one of its investment strategies, a portion of the Partnership's income may be considered unrelated debt financed income which is unrelated business taxable income to tax-exempt Limited Partners.  Limited Partners which are tax-exempt organizations thus may be required to pay tax on a portion of the income which they derive from the Partnership.  (See "FEDERAL INCOME TAX CONSEQUENCES - Tax-Exempt Investors," below).

## OFFERING OF INTERESTS

The Offering of Interests is being made to a limited number of qualified purchasers pursuant to an exemption from registration under Section 4(2) of the Act and pursuant to Regulation D promulgated thereunder.  The Interests are suitable investments only for sophisticated investors for whom an investment in the Partnership does not constitute a complete investment program and who fully understand and have the financial resources necessary to assume the risks involved.

Sales of Interests will be effected by the General Partner or by an agent of the General Partner.  The General Partner will not be compensated by commissions or other special remuneration in connection with the Offering.  In the event that Interests are sold by an agent of the General Partner, the agent will be compensated by the General Partner and Partnership assets will not be used to compensate any such agent.  The General Partner may pay referral fees, equal to a portion of its Management Fee, to individuals or entities which refer to the General Partner potential investors which ultimately acquire Interests in the Partnership.  These payments will not increase the fees payable by investors who are referred by such individuals or entities.

The Offering is being made to a limited number of Accredited Investors, as that term is defined in SEC Regulation D.  Potential investors are required to satisfy certain financial criteria in order to ensure, among other things, (1) the General Partner's compliance with the IAA and (2) that each potential investor qualifies as a Qualified Eligible Participant, and purchasers of Interests must generally have net investable assets of $2,000,000 or more to qualify for an investment in the Partnership.  The specific categories under which investors

qualify for the Partnership are presented in detail in the Partnership's Subscription Agreement.

It is the Partnership's policy that each investor initially purchase a minimum of $250,000 of Interests, although this requirement may be waived in individual cases in the discretion of the General Partner.  The General Partner reserves the right to cease selling Interests at any time without notice and may refuse to accept any portion or all of any amount tendered for the purchase of Interests.

Limited Partners may be admitted at the discretion of the General Partner, as of the first day of any calendar month (or at such other times as the General Partner may determine).  Limited Partners will be admitted to the Partnership as of the beginning of each month.  While there is no maximum amount of funds that may be contributed to the Partnership, the General Partner may determine at some future date not to accept further contributions.

Subscription instructions are included in the Subscription Materials which accompany this Offering Memorandum.

## CONFLICTS OF INTEREST

The following inherent or potential conflicts of interest should be considered by prospective investors before investing in the Partnership:

The General Partner, as well as one or more Investment Advisers, advise other accounts investing in similar securities or other instruments.  While it is unlikely that any such accounts in the aggregate, will have a significant effect upon the securities markets, investors should note that the accounts may be bidding against each other to buy or sell the same securities.  In addition, the General Partner and Investment Advisers or their shareholders, directors, officers, partners or employees, may also purchase and sell similar securities and other instruments either for their own account or on behalf of other clients.  Limited Partners will not be permitted to inspect the records of such trading.  The General Partner and Investment Advisers will use their best efforts to ensure that no client will be treated unfairly in relation to their other clients.

The officers of the General Partner and Investment Advisers will devote such time and effort to the conduct of the business of the General Partner and Investment Advisers and the Partnership as they shall determine to be necessary and reasonable.  However, no officer shall be required to devote his or her full time and efforts thereto.  (See "THE GENERAL PARTNER" above.)

The General Partner and each Investment Adviser is a fiduciary with respect to the Partnership and is obligated to act in the Partnership's best interests.  Nevertheless, the General Partner may enter into arrangements with Investment Advisers involving fees based

on the performance of the assets under management.  In any such case, because the fee payable to the Investment Adviser would increase with an increase in income or gains, the arrangement may create an incentive for the Investment Adviser to make more speculative investments on behalf of the Partnership than it would otherwise make if it received compensation unrelated to the investment performance.  The General Partner's Incentive Allocation may create a similar incentive for the General Partner.

The General Partner and the Investment Advisers may utilize the brokerage services of an affiliate of the General Partner to effect transactions for the Partnership.  The affiliate will receive a fee for such services.  Seymour Zises, Andrea Tessler and Marshall Kiev, who are employed by and are owners of the General Partner and are also registered representatives and owners of an affiliated broker-dealer, will receive commission credits on such transactions.  (See also "SELECTION OF BROKERS AND DEALERS" for additional disclosure regarding potential conflicts of interest.)

## MATTERS RELATING TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974

### Acceptance of ERISA and IRA Investors

The Partnership may, in the General Partner's discretion, accept subscriptions from an employee benefit plan (a "Plan") subject to the Employee Retirement Income Security Act of 1974, as amended, and any regulations which now or in the future may be promulgated thereunder ("ERISA"), if a Plan fiduciary who is unaffiliated with the General Partner independently makes the determination to invest in the Fund and that such investment is permissible under (a) the Internal Revenue Code of 1986, as amended, and any regulations which are now or in the future may be promulgated thereunder (the "Code"), and (b) the trust instrument establishing the Plan.  The Partnership may also accept subscriptions from Individual Retirement Accounts ("IRAs") in its discretion, and subject to the receipt of documentation acceptable to it, if the IRA owner or an adviser who is unaffiliated with the Investment Adviser independently makes the determination to invest in the Partnership and that such investment is permissible under the Code and the trust instrument establishing the IRA.  (For purposes of this discussion, Limited Partners which are Plans or IRAs will sometimes be referred to as "Retirement Plan Partners.")

Section 404 of ERISA requires Plan fiduciaries to make prudent investments and diversify the investments of the Plan in order to minimize the risk of large losses.  Before investing any plan assets in the Partnership, the Plan fiduciaries should carefully consider their obligations under ERISA in light of the Partnership's structure and its investment objectives.

<u>Plan Assets</u>

ERISA treats the assets of certain pooled investment vehicles, such as the Partnership, as "plan assets" if, among other things, equity participation by "benefit plan investors," including IRAs, is significant.  Under ERISA, equity participation would be "significant" if immediately after the most recent acquisition of any equity interest in the entity, "benefit plan investors," as that term is defined in Department of Labor Regulation 2510.3-101, in the aggregate hold 25 percent or more of the value of "equity participation" in the Partnership, which, for purposes of this Memorandum, are Interests in the Partnership.  A "benefit plan investor" includes any employee benefit plan (as defined in Section 3(3) of ERISA) whether or not such plan is subject to Title I or II of ERISA, plans described in Section 4975(e)(1) of the Code (which includes IRAs) and any entity whose underlying assets include plan assets.

If the percent of equity interests held by "benefit plan investors" is greater than 25 percent, <u>i.e.</u>, if the Partnership's assets are plan assets, as defined in ERISA, then, depending on the character of those investors, the General Partner and the Investment Advisers may be subject to rules governing fiduciaries, with the further result that the investment and administration of the assets of the Partnership's portfolio will be restricted by ERISA, unless an exemption is available.  Under ERISA, certain transactions with "parties in interest" (<u>e.g.</u>, providers of services to the plans, an employer sponsoring an employee benefit plan or a "relative," as defined, thereof) are prohibited unless specifically exempt.

<u>Obligations of Retirement Plan Partners; Indemnification</u>

The Subscription Agreement imposes certain obligations on each Retirement Plan Partner to deliver specified documents and information to the Partnership upon request. The Subscription Agreement requires each Retirement Plan Partner, to the extent permitted by law, to indemnify the Partnership against any and all liabilities which the Partnership may incur under ERISA or otherwise resulting from the inaccuracy of certain representations with respect to the Retirement Plan Partner's status and liabilities under ERISA or breach by such Retirement Plan Partner of any requirements set forth in the Subscription Agreement.

RESTRICTIONS ON TRANSFER OR DISPOSITION OF PARTNERSHIP INTERESTS

Subject to the discretion of the General Partner, no Limited Partner may withdraw all or any part of its investment in the Partnership except upon 60 days' written notice to the General Partner prior to the end of each June or December of the Partnership's fiscal year but only after such investment has been invested with the Partnership for one full year. All withdrawals are subject to a temporary suspension, upon a determination by the General Partner that an orderly liquidation of Partnership assets is needed to effect a withdrawal without unduly affecting the value of the Partnership's assets.

The Interests have not been registered under the Act, or any state securities law, and may not be sold or otherwise disposed of unless they are so registered or there is available an exemption from registration.  Neither the Partnership nor the General Partner intends or has agreed to register the Interests so as to permit their transfer.  Furthermore, no Limited Partner may transfer, sell, assign or otherwise dispose of his Interest except with the prior written consent of the General Partner nor may the successor by operation of law of any Limited Partner become a substitute Limited Partner without the prior written consent of the General Partner, which in either case may be given or withheld in the sole discretion of the General Partner.

## FEDERAL INCOME TAX CONSEQUENCES

THE FOLLOWING IS A GENERAL SUMMARY OF SOME OF THE FEDERAL INCOME TAX CONSEQUENCES TO LIMITED PARTNERS OF AN INVESTMENT IN THE PARTNERSHIP.  IT IS NOT INTENDED AS A COMPLETE ANALYSIS OF ALL POSSIBLE TAX CONSIDERATIONS IN ACQUIRING, HOLDING AND DISPOSING OF AN INTEREST IN THE PARTNERSHIP AND, THEREFORE, IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING BY EACH INVESTOR, PARTICULARLY SINCE THE FEDERAL, STATE AND LOCAL INCOME TAX CONSEQUENCES OF AN INVESTMENT, IN PARTNERSHIPS LIKE THE PARTNERSHIP MAY NOT BE THE SAME FOR ALL TAXPAYERS.  THIS DISCUSSION HAS BEEN PREPARED ON THE ASSUMPTION THAT A LIMITED PARTNER WILL BE AN INDIVIDUAL WHO IS A CITIZEN OR RESIDENT OF THE UNITED STATES.  INVESTORS SHOULD CONSULT THEIR OWN TAX ADVISERS WITH RESPECT TO THE TAX CONSEQUENCES (INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES) OF AN INVESTMENT IN THE PARTNERSHIP.

The statements contained herein are based on existing law as contained in the Internal Revenue Code of 1986, as amended (the "Code"), Treasury regulations, administrative rulings and other pronouncements, and court decisions as of the date hereof. The existing law, as presently interpreted, is subject to change by either new legislation, or by new or differing interpretations in regulations, administrative pronouncements of the Internal Revenue Service ("IRS") or court decisions, any of which could, by retroactive application or otherwise, adversely affect a Limited Partner's investment in the Partnership.

Classification as a Partnership.  The availability of certain tax benefits depends on classification of the Partnership as a partnership rather than as an association taxable as a corporation for federal income tax purposes. Under the current elective regime of the Treasury regulations for the classification of unincorporated entities, such as the Partnership, the General Partner believes that the Partnership will be treated as a partnership for federal income tax purposes and not as an association taxable as a corporation.  No assurance can be

given, however,  that partnership status could not be lost because of future changes in the law or the regulations, or due to changes in the manner in which the Partnership is operated.

If the Partnership were classified as an association taxable as a corporation, either at the outset, or due to a change in the way the Partnership is operated or in relevant law (including legislation, regulations, rulings or case law), the Partnership would be subject to federal income tax on any taxable income at regular corporate tax rates (reducing the return to the Partner).  In such event, the Partners would not be entitled to take into account their distributive shares of the Partnership's deductions, and would take into account the Partnership's income in computing their taxable income only to the extent distributed to them either as dividends or as non-dividend distributions in excess of the tax basis of their Partnership interests.

Taxation of Partners on Income or Losses of the Partnership.  So long as the Partnership is classified as a partnership for federal income tax purposes, it will not be required to pay federal income tax as an entity.  Instead, each Partner will report on his federal income tax return for each year during which he is a member of the Partnership, his distributive share of the items of income, gain, loss, deduction and credit of the Partnership, whether or not cash is distributed to such Partner during the taxable year. The characterization of an item of income, gain, loss or deduction (e.g., as a capital gain or loss as opposed to ordinary income or loss) will usually be the same for the Partners as it is for the Partnership.  Since Partners will be required to include Partnership income in their respective income tax returns without regard to whether there are distributions attributable to that income, Partners may become liable for federal, state and local income taxes on that income even though they have received no distributions from the Partnership with which to pay such taxes.

Basis of Limited Partnership Interest.  Assuming contributions are made in cash, a Limited Partner's tax basis in his Partnership interest will include the amount of money such Partner contributes to the Partnership, increased by (i) any additional contributions made by him to the Partnership, (ii) his distributive share of any Partnership income, and (iii) the amount, if any, of his share of Partnership indebtedness; and decreased, but not below zero, principally by (x) distributions from the Partnership to him, (y) the amount of his distributive share of Partnership losses and (z) any reduction in his share of Partnership indebtedness.

Limitations on Deduction of Losses.  The deduction of partnership losses by a partner is subject to numerous limitations.  A partner's share of partnership losses and deductions in any taxable year generally may be deducted only to the extent of his tax basis in his partnership interest at the end of such year, or, in the case of individuals and certain closely-held corporations, if less, the amount he is considered "at risk" (i.e., generally, to the extent of the partner's investment of cash and property and borrowed amounts for which the partner is personally liable or which are secured by personal assets other than his partnership interest). Additionally, it is likely that most of the income and loss of the  Partnership will be

22

characterized as portfolio income and loss, and, thus, Limited Partners subject to the passive activity loss limitations will not be entitled to offset passive losses derived from sources other than the Partnership against their distributive shares of Partnership portfolio income.

Limitation on Deductibility of Certain Expenses. The Code limits the deductibility of interest paid by an individual on indebtedness incurred to purchase or carry investment property to the amount of the taxpayer's net investment income. Investment interest includes interest paid by the Partnership on its debt and would generally include interest paid by a Limited Partner on indebtedness incurred to purchase or carry his interest in the Partnership to the extent the Partnership's income constitutes "portfolio income."  It is anticipated that all or most income earned by the Partnership and passed through to the Limited Partners should be included in net investment income.  Subject to certain limitations, investment interest expense which is not deductible in a taxable year can be carried forward until all disallowed amounts have been deducted.

Subject to certain enumerated exceptions, an individual taxpayer's miscellaneous itemized deductions (including miscellaneous itemized deductions derived through a partnership), which include investment expenses, are deductible only to the extent they exceed two percent of the taxpayer's adjusted gross income.  An individual's itemized deductions, computed after the application of all other limitations, including the two percent limitation described above, is further reduced if the individual's adjusted gross income exceeds certain thresholds.  The individual's itemized deductions are reduced by the lesser of (i) three percent of the individual's gross income over the applicable income threshold or (ii) 80% of the itemized deductions otherwise allowable for the taxable year.  For purposes of this reduction, itemized deductions do not include deductions for medical expenses, casualty and theft losses and investment interest.  If the Partnership is considered not to be engaged in the business of trading in securities, these limitations would apply to the Partnership's expenses, including the Management Fee.  Prospective investors should consult their tax advisers regarding the potential impact of this provision on their personal tax situations.

Contributions.  In general, the admission of a Limited Partner in exchange for a capital contribution is not a taxable event for either the Partner or the Partnership. However, the contribution of appreciated securities to the Partnership in exchange for an Interest may result in a recognition of gain by the contributing Partner unless the contributed securities meet certain requirements with respect to diversification.  In general, these diversification requirements are met if not more than 25% of the value of the contributed assets is invested in stock or securities of any one issuer and not more than 50% of the value of the contributed assets is invested in stock or securities of five or fewer issuers.  Any contribution of cash or securities is subject to acceptance by the General Partner in all events.

Distributions.  Generally, distributions of cash to a partner are taxable only to the extent they exceed such partner's basis in his partnership interest.  The amount of such excess generally would be taxable as capital gain.  It should be noted that, although gain may be recognized upon a partial redemption of an interest in the Partnership, loss will be

23

recognized only upon a complete redemption of all of a Limited Partner's interest in the Partnership and only if the distribution consists solely of cash and property described in Section 751 of the Code (generally, property which, on sale, would produce ordinary income). Therefore, a Limited Partner who sustains an economic loss on partial redemption of his interest in the Partnership would not be allowed a loss for federal income tax purposes at the time of such redemption.

It is possible, under the Partnership Agreement, that Partnership assets other than cash may be distributed in kind to a Partner. No gain or loss is recognized in a distribution solely of property other than cash, unless the Partnership has Section 751 property and the distribution either is non-pro rata or is in complete liquidation of the Partner's interest. In such cases, the Partner or the Partnership, or both, may recognize gain or loss. The basis to a Partner of property distributed to him in liquidation of his entire interest in the Partnership will be equal to the basis of such Partner's interest in the Partnership decreased by any cash received in the distribution. In the case of any nonliquidating distribution, the basis to such Partner of the property distributed will be the lesser of its basis to the Partnership prior to the distribution or such Partner's basis for his Partnership interest. In such a distribution, the Partner's basis for such Partner's interest will be reduced by the amount of the basis of the property distributed to such Partner.

Allocations of Income and Loss. A partner's distributive share of partnership income, gain, loss, deduction or credit for federal income tax purposes is generally determined in accordance with the allocation provisions of the partnership agreement. However, under Section 704(b) of the Code, such an allocation will be respected only if it either has "substantial economic effect" or is in accordance with the partner's "interest in the partnership."

Although the matter is not free from doubt, the General Partner believes that the allocations of income, deductions and other tax items to the Limited Partners contained in the Partnership Agreement are in accordance with the Limited Partners' interests in the Partnership and will be sustained in all material respects. It should be noted, however, that there can be no assurance that the IRS will not claim that such allocations are not in accordance with the Limited Partners' interests in the Partnership and, therefore, attempt to alter allocations to the Limited Partners.

In the event property other than cash is contributed to the capital of a partnership and gain is not required to be recognized at the time if contribution, under Section 704(c) of the Code, gain (or loss) with respect to any such property in an amount equal to the difference between the basis of such property and its fair market value at the time it is contributed to the partnership shall, for federal income tax purposes, be specially allocated to the partners who contributed such property. Similar rules apply to unrealized gains and losses in the portfolio of a securities investment partnership, such as the Partnership, when a new partner is admitted to the partnership. In such case, upon realization, the taxable gains and losses must be allocated among those partners who were

previously recipients of the corresponding economic allocations.  The Partnership will adopt a method of allocating taxable gains and losses which is consistent with the principles of Section 704(c) of the Code.

      Sale of an Interest or Withdrawal.  Generally, based on the nature of the investments of the Partnership and the nature of a Partner's investment in the Partnership, a Partner will recognize capital gain or loss (except to the extent gain is attributable to property described in Section 751 of the Code, in which event the gain will be treated as ordinary income) upon the sale or taxable exchange of an interest in the Partnership or upon receiving only cash from the Partnership upon withdrawal therefrom (see "Distributions" above).  The amount of such gain or loss will be determined by the difference between the amount realized and the Partner's adjusted tax basis in such Partner's interest in the Partnership.  For this purpose, the amount realized includes such Partner's share of the Partnership's outstanding liabilities, if any.

      Certain Partnership Transactions.  The Code, administrative rulings and decisions contain specific rules regarding the taxation of securities, futures and option transactions such as, for example, the rules on "wash sales", "marking to market", conversion transactions and "straddles" entered into by entities such as the Partnership.  Such rules are complex and in certain cases are unclear, and may be subject to change at any time.  Accordingly, each investor should consult his own tax adviser regarding the tax treatment of specific transactions entered into by the Partnership.

      Investors should note that the "mark-to-market" rules applicable under Code Section 1256 to regulated futures contracts, foreign currency contracts and non-equity options and the constructive sale rules applicable under Code Section 1259 to short sales against the box and other appreciated financial positions may result in the Partnership recognizing gain for tax purposes prior to the time it has economically realized that gain.

      Elections as to Basis Adjustments.  The Partnership Agreement does not require the General Partner to make an election under Section 754 of the Code, nor does it prohibit the General Partner from doing so.  In general, such an election, if made, would permit the Partnership to adjust the tax basis of its assets to reflect gain or loss attributable to an interest in the Partnership sold or exchanged, or transferred upon the death of a partner.  Certain adjustments might also arise if property is distributed in kind.  In general, in the case of a transfer, such adjustments only affect the successor partner and are beneficial to it if the property has appreciated in value, and adverse if it has decreased in value.  In the case of a distribution, the adjustments, if any, affect the Partners other than the distributee.  An election, once made, is normally irrevocable.  If there are many transfers or distributions to which the election applies, the calculation of the adjustments and the necessary record keeping become extremely complicated.  As a result, the General Partner, in its discretion, may choose not to make the election, even though the failure to make such an election may increase in some instances the overall taxes of the Partners.

<u>Partnership Tax Returns; Audit</u>.  The information return filed by the Partnership may be audited by federal and other taxing authorities.  There can be no assurance that such authorities will not make adjustments in the tax figures reported in such return.  Any adjustments resulting from such audits may require each Partner to file an amended tax return, pay additional income taxes and interest and possibly result in the imposition of penalties or an audit of the partner's own return.  Any audit of a Partner's return could result in adjustments of non-Partnership, as well as Partnership, income and losses.

Generally, upon an IRS audit, the tax treatment of Partnership items will be determined at the Partnership level pursuant to administrative or judicial proceedings conducted at the Partnership level.  Each Limited Partner will generally be required to file his tax returns in a manner consistent with the information returns filed by the Partnership or be subject to possible penalties, unless the Limited Partner files a statement with his tax return on Form 8082 describing any inconsistency.  The General Partner will be the Partnership's "tax matters partner" and as such will have certain responsibilities with respect to any IRS audit and any court litigation relating to the Partnership.

<u>Tax-Exempt Investors</u>.  Income recognized by tax-exempt entities, including qualified retirement plans (stock, bonus, pension or profit-sharing plans described in section 401(a) of the Code) and individual retirement accounts is exempt from federal income tax except to the extent of "unrelated business taxable income."  Unrelated business taxable income ("UBTI") is income from an unrelated trade or business regularly carried on, excluding certain items including dividends, interest, royalties, and gains from the sale of property that is neither inventory nor held primarily for sale to customers in the ordinary course of business.  Income from an unrelated trade or business may be further adjusted by certain deductions for expenses attributable to the unrelated trade or business.  A $1,000 deduction is allowed with respect to the total UBTI of an entity per tax year.

A tax-exempt entity is engaged in an unrelated trade or business if it carries on a trade or business unrelated to its exempt purpose or the entity is a partner in a partnership which carries on such business.  In addition, a tax-exempt entity is deemed to be engaged in an unrelated trade or business to the extent of its "unrelated debt financed income," which is income derived from property with respect to which there is outstanding acquisition indebtedness and the use of which is unrelated to its exempt purpose.  Dividends, interest, annuities, royalties, and other receipts otherwise excluded in computing unrelated business taxable income are nevertheless included to the extent property generating those receipts is debt financed.

Since it is anticipated that the Partnership's activities will result in the realization of interest and dividend income and in capital gain or loss from the disposition of property, the Partnership's income generally should not constitute UBTI.  However, the Partnership may borrow money to acquire marketable securities by trading on margin or by the use of leverage.  Such indebtedness will constitute acquisition indebtedness and therefore a portion of the income from such securities (including capital gains) will constitute UBTI.

26

Such portion will be based upon the ratio of the average acquisition indebtedness to the adjusted basis of the property, as determined under the Code and the regulations thereunder.

      A tax-exempt entity which purchases an interest in the Partnership will be required to report the portion of its pro rata share of the Partnership's income which constitutes UBTI if and to the extent that the entity's UBTI from all sources exceeds $1,000 in any one year.  In addition, a portion or all of a tax-exempt organization's share of Partnership income, as well as any gain realized upon the sale or disposition of its Partnership Interest, would constitute UBTI if such organization incurs indebtedness in connection with the acquisition of its Interest.

      The potential for UBTI may have a significant effect on any investment by a tax-exempt entity in the Partnership, and prospective tax-exempt investors are urged to consult their tax advisers with respect to an investment in the Partnership.

      <u>State and Local Income Tax</u>.  Each Partner may also be liable for state and local income taxes payable to the state and locality in which he is a resident or doing business or to a state or locality in which the Partnership conducts business.  Since the income tax laws of each state and locality may differ from the above discussion of federal income tax laws, each prospective Limited Partner should consult his own tax counsel with respect to potential state and local income taxes payable as a result of an investment in the Partnership.

      <u>IMPORTANCE OF OBTAINING PROFESSIONAL ADVICE</u>.  THE FOREGOING ANALYSIS IS NOT INTENDED AS A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE THE INCOME TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP ARE COMPLEX AND CERTAIN OF THESE CONSEQUENCES WOULD VARY SIGNIFICANTLY WITH THE PARTICULAR SITUATION OF EACH LIMITED PARTNER.  ACCORDINGLY, PROSPECTIVE INVESTORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISERS REGARDING THE POSSIBLE TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP.

## SUMMARY OF THE LIMITED PARTNERSHIP AGREEMENT

The rights and obligations of the Partners are governed by the Partnership Agreement.  The statements set forth below concerning significant provisions of the Partnership Agreement applicable to new investors are merely a summary and do not purport to be complete.  The statements in this Offering Memorandum with respect to the Partnership Agreement are qualified in their entirety by reference to the Partnership Agreement, which is hereby incorporated herein and should be read in its entirety before investing in the Partnership.  Unless the context otherwise requires, all terms used hereinafter without definition have the meanings assigned to them in the Partnership Agreement.

Management.  The management of the Partnership is vested exclusively in the General Partner.  Limited Partners have no right to participate in the management of the Partnership and no authority or right to act on behalf of the Partnership in connection with any matter.

Limited Liability.  A Limited Partner's liability for obligations of the Partnership is generally limited to the amount of his contributions of capital and his rights to the undistributed income of the Partnership.

Net Asset Value.  Net Asset Value shall be equal to the difference between (i) the value of all assets of the Partnership, including, but not limited to, Securities, cash, receivables, prepaid expenses, and deferred charges and fixed assets, less appropriate provision for depreciation or amortization; and (ii) the amount of all liabilities of the Partnership and all proper reserves with respect thereto, including, without limitation, notes and accounts payable and accrued expenses.

Capital Accounts.  The Partnership establishes a Capital Account for each Partner as of the first day of each Partner's admission to the Partnership.  A Partner's Capital Account shall reflect an amount equal to his Initial Capital Contribution, and will be adjusted for any additional Capital Contributions and/or withdrawals of capital and his proportionate share of increases or decreases in the Net Asset Value of the Partnership.  The Capital Account of a Limited Partner withdrawing all or any portion of his capital is subject to a charge not to exceed 1% of his Capital Account to cover costs incurred by the Partnership in selling portfolio securities in order to effect the payment of the amount withdrawn.

Compensation of the General Partner.  In exchange for its services to the Partnership, the Partnership will pay the General Partner a management fee (the "Management Fee") computed the rate of 1% per annum of the net value of Partnership assets.  The Management Fee is separately computed by reference to and charged to the Capital Account of each Limited Partner quarterly in arrears.  Further, to compensate the General Partner for overhead costs incurred in connection with its performance of its duties as General Partner, the Partnership will pay the General Partner an expense allowance (the "Expense Allowance") on the first day of each month (with respect to the preceding month)

in the amount of .0333% (i.e., 0.40% annually) of the sum of the Capital Accounts of the
Partners.

   Determination and Allocations of Gains and Losses.  The accounts of the
Partnership will be maintained in accordance with generally accepted accounting principles.
Thus, the securities in which the Partnership invests will be marked-to-market, and Net Gains
and Net Losses of the Partnership will include both realized income, gains and losses and
unrealized appreciation and depreciation in the Partnership's investments.  Net Gains and Net
Losses will be allocated on a monthly basis among the Partners based on their respective
Partnership Percentages, provided that the Management Fee expense will be allocated among
and charged to the Capital Accounts of the Partners upon which the payment obligation is
based.

   As of the end of each fiscal year, to the extent Net Gain allocated to a Limited
Partner for the fiscal periods during a fiscal year based on Partnership Percentages exceeds
the sum of Net Loss and Management Fee expense allocated to the Limited Partner for the
fiscal periods during the fiscal year, 10% of such excess shall be reallocated to the General
Partner (the "Incentive Allocation").

   In the event of a Limited Partner's voluntary or involuntary withdrawal of
capital from the Partnership as of a date other than the end of a fiscal year, the Incentive
Allocation shall be charged to the Capital Account of the withdrawing Limited Partner as of
the Effective Date of any such withdrawal as the General Partner determines is necessary to
assure a proper accounting and allocation of Net Gain and Net Loss in accordance with the
provisions of the Partnership Agreement.  The General Partner may, from time to time, waive
its entitlement to the Incentive Allocation in whole or in part, with respect to one or more
Limited Partners.  Notwithstanding the provisions of the Partnership Agreement with respect
to the Incentive Allocation, no Limited Partner that became a Limited Partner on or before
November 1, 1999, shall become subject to the Incentive Allocation until January 1, 2001.

   Net Worth of General Partner.  The Partnership Agreement requires the
General Partner to maintain its net worth (exclusive of the value of its Capital Account) at an
amount necessary to conduct the activities and business in which it is engaged.

   General Partner's Capital Contribution.  The General Partner shall be required
to make capital contributions as necessary to maintain its Capital Account at an amount
greater than or equal to the lesser of (i) $500,000 and (ii) 1% of the total positive Capital
Account balances of the Partnership (including the Capital Account of the General Partner).
However, in no event shall the General Partner's Capital Account be less than 0.2% of the
sum of the Capital Accounts of all of the Partners.  As of September 30, 1999, the Capital
Account of the General Partner was approximately 1.5% of the total positive Capital Account
balances of the Partnership

   Valuation of Partnership Securities.  For purposes of valuing any contributed

securities, or the Partnership's investments, including the determination of Net Asset Value, any security held by the Partnership which is listed on a national securities exchange shall be valued at its last sale price on the date of valuation, or, if no sales occurred on that date, at the mean "bid" and "asked" prices on that date.  Any security which is not so listed shall be valued at its last closing "bid" price if held "long," and last closing "asked" price if held "short."  All other securities shall be assigned such value as the General Partner or an Investment Adviser, subject to the General Partner's oversight, shall in good faith determine.  The General Partner is permitted, in lieu of the foregoing methods of valuation, to utilize pricing services (which shall use the methods of valuation adopted by such pricing services, from time to time) to value the Partnership's investments.

      Limitations on Withdrawals.  The General Partner is authorized to suspend withdrawals, in its sole discretion, as necessary to effect an orderly liquidation of the Partnership's assets without unduly affecting the value of the Partnership's assets.  In addition, Delaware law prohibits the Partnership from making any distribution, to the extent that at the time of the distribution, after giving effect to the distribution, the liabilities of the Partnership, other than liabilities to Partners on account of their Interests and for which the recourse of creditors is limited to specified property of the Partnership, exceed the fair value of its assets.  If the General Partner must withhold any such amount, the unused portion of such withheld amount shall be distributed, with interest, after the need therefor shall have ceased.

      Dissolution of the Partnership.  Upon the election of the General Partner to dissolve the Partnership, or upon the withdrawal, declaration of legal incapacity, dissolution or bankruptcy of the General Partner (each, a "Dissolving Event"), the Partnership shall be dissolved.  In the event of a dissolution of the Partnership due to any of the foregoing, the Partnership shall terminate, and the General Partner or Liquidating Agent, as the case may be, shall wind up the affairs of the Partnership and discharge the functions of the General Partner with respect thereto.  Upon liquidation, each Partner will receive an amount equal to the positive balance in its Capital Account after giving effect to allocations of Net Gain and Net Losses through the date of liquidation.

      Assignability of a Partner's Interest.  Except with the prior written consent of the General Partner, no Limited Partner may sell, assign or otherwise dispose of, create or suffer the creation of a security interest in his Interest, in whole or in part, or enter into any agreement as a result of which any individual, firm, corporation or other entity shall become interested with him therein.

      Amendments to the Partnership Agreement.  The Partnership Agreement may be modified or amended at any time by the consent of the Limited Partners having in excess of 50% of the Partnership Percentages and the written consent of the General Partner.  Without the consent of the other Partners, however, the General Partner may amend the Partnership Agreement to reflect appropriate changes made, from time to time, in the membership of the Partnership and the capital contributions of the Partners, or to amend or

modify the Partnership Agreement in any other manner which does not adversely affect the rights or interests of any Limited Partner.  Each Partner, however, must consent to any amendment which would (i) reduce his Capital Account or his rights of contribution or withdrawal with respect thereto, (ii) amend Section 9.03 of the Partnership Agreement (pertaining to amendments thereto), or (iii) affect the method of allocation of gains and losses.

       NASD Free-Riding Rules.  Rule IM-2110-1 of the NASD Conduct Rules (the "Free-Riding Rules") prohibits certain persons from purchasing securities in a public offering which immediately trade at a premium above the public offering price ("Hot Issues").  Under the terms of the Partnership Agreement, if any Partner is prohibited from investing in any security by virtue of the Free-Riding Rules (a "Restricted Partner"), and the Partnership chooses to invest in that security, the Restricted Partner may not share in the profits or losses resulting from the Partnership's investment in such securities.  Specifically, any Hot Issue investment made by the Partnership will be held in a segregated account in which the Restricted Partner will not have an interest.  The General Partner is a Restricted Partner for these purposes.  The General Partner has the right, in its discretion, to cause a Restricted Partner to transfer its entire interest in the Partnership to a separate partnership that will be identical in all respects to the Partnership, except that it will not invest in Hot Issues.  All other investments by the two partnerships would be made together on a commingled basis.

       Each Limited Partner shall provide the General Partner, upon request, with information concerning the Limited Partner's occupation and any other information necessary to enable the Partnership to comply with the Free-Riding Rules.  Any Partner which is itself a partnership shall provide such information for each of its partners.

       Indemnification of General Partner.  Except to the extent otherwise mandated by any applicable state or federal regulation or common law, pursuant to which the waiver described in this paragraph may be deemed void in whole or in part, the General Partner will not be liable for losses or damages arising out of or in connection with its activities as General Partner except by reason of bad faith, fraud, gross negligence, or reckless or intentional misconduct, or actions found to have been taken without reasonable belief that such actions were properly authorized by the Partnership Agreement, and shall be indemnified by the Partnership against losses or damages resulting from other causes.

       Financial Reports.  Quarterly information summaries for each of the first three fiscal quarters in each Fiscal Year will be furnished to each Partner.  Annual reports consisting of audited financial statements of the Partnership reported on by independent public accountants will be delivered to each Partner after the end of each Fiscal Year of the Partnership.  Information concerning the Partnership that is necessary for the preparation of federal income tax returns will be provided to each Partner within approximately seventy-five (75) days following the close of the Fiscal Year of the Partnership.

## CUSTODIAN, COUNSEL AND AUDITOR

Each Investment Adviser will make its own custody arrangements with respect to Partnership assets managed thereby. Custodians will be registered broker-dealers, banks or trust companies. Uninvested cash which has not been allocated to the management of an Investment Adviser will be held in an account in the Partnership's name with Family Management Securities LLC, which has a clearing arrangement with Pershing, a division of Donaldson, Lufkin, Jenrette Securities. Neither the General Partner nor any Investment Adviser will hold custody of the Partnership Assets.

The firm of Swidler Berlin Shereff Friedman, LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York 10174, is counsel to the Partnership.

The firm of Richard A. Eisner & Company, 575 Madison Avenue, New York, New York 10022, is the Partnership's independent auditor.

## FISCAL YEAR

The Partnership's fiscal year ends on December 31.

## EXPENSES

The Partnership pays the General Partner an annual management fee of 1% of the Net Asset Value of the Partnership, and an annual expense allowance of 0.40% of the Net Asset Value of the Partnership. In addition, the Partnership bears the cost of compensating the Investment Advisers, and ongoing legal, bookkeeping, accounting and auditing expenses. The Partnership should not be subject to tax. (See "FEDERAL INCOME TAX CONSIDERATIONS," above.) The General Partner or Investment Advisers retained on behalf of the Partnership may acquire securities through a broker and the Partnership will bear applicable commissions. (See "SELECTION OF BROKERS AND DEALERS".) Expenses of the Partnership are described below.

Break-even Analysis

The following table is a summary of fees and expenses expressed both as a dollar amount and as a percentage of a $250,000 investment in the Partnership. Based upon the twelve months ending December 31, 1998, the General Partner estimates that during each year the Partnership would be required to make profits equal to 1.43% ($3,587) based upon an initial investment of $250,000) of the Partnership's Net Asset Value in order for the value of an investment in the Partnership at year end to equal the initial value of that investment at the beginning of the year. If the Partnership were unable to achieve such profits, its assets

would likely be decreased by expenses during the year.  The impact of such estimated expenses is described in the following table.  There can be no assurance that the expenses to be incurred by the Partnership will not exceed the amounts as estimated or that there will not be any other expenses.

Estimated Operating Expenses
(12-Month Period of Operation)

|  | $250,000 Investment | Percentage of $250,000 Investment |
|---|---|---|
| The Partnership |  |  |
| Management and Expense Allowance Fees (1) | $3,500 | 1.40% |
| Investment Advisory Fees (2) | $840 | 0.34% |
| Amortization of Start-up Costs (3) | $165 | 0.07% |
| Interest and Dividend Expense (4) | $834 | 0.33% |
| Operating Expenses (5) | $2,068 | 0.83% |
| Less: Interest and Dividend Income (6) | ($4,333) | (1.73%) |
| Incentive Allocation (7) | --- | 0.00% |
| Portfolio Funds (8) |  |  |
| Operating Expenses (9) | $1,165 | 0.47% |
| Management Fees (10) | $1,797 | 0.72% |
| Incentive Allocation (11) | --- | 0.00% |
| Brokerage Fees (12) | $562 | 0.22% |
| Interest and Dividend Expense (13) | $7,462 | 2.98% |
| Less:  Interest/Dividend Income (14) | ($10,473) | (4.19%) |
| Break Even Point | $3,587 | 1.43% |

(1) The Partnership pays the General Partner a 1% annual management fee, and a 0.40% annual expense allowance to compensate the General Partner for overhead costs incurred in connection with its performance of its duties.  The General Partner's Incentive Allocation is not reflected in the table because such allocation will be made only on the Partnership's Net Gain after deducting all of the Partnership's expenses.

(2) The Partnership bears the cost of compensating Investment Advisers retained on behalf of the Partnership.  Currently, these expenses are approximately 1% of the value of assets allocated to the Investment Advisers.  Such expenses are generally expected to be approximately 1% - 2% of the value of assets allocated, but may be higher or lower, or may be based on a percentage of profits.

(3) Expenses associated with the organization of the Partnership and the offering and sale of interests in the Partnership incurred in 1995 are being capitalized and amortized over a period of 60 months.

(4) The Partnership may borrow to purchase investments, including by means of margin transactions, in which securities are purchased pursuant to a loan, the securities are held as collateral by a broker, and interest is charged on the loan.

(5) Operating expenses includes custodial fees, taxes and other expenses, such as lawyers' and accountants' fees, incurred by the Partnership in connection with its activities.

(6) The Partnership earns interest on fixed income securities and on cash held and margin deposits with brokers.

(7)  The calculation presented above does not include the incentive allocation of profits paid to Portfolio Fund managers, which represents 20% of new net profits from each of the Portfolio Funds.  Such incentive fees are charged after deducting all expenses.

(8) The fees and expenses which are contained in this table are based upon the Partnership's investments in 7 portfolio funds as of December 31, 1998.  No portfolio fund will be allocated more than 10% of the Partnership's assets.

(9) Operating expenses includes custodial fees, taxes and other expenses, such as lawyers' and accountants' fees, incurred by the Portfolio Funds in connection with their activities.

(10) Portfolio Funds pay management fees ranging from 1% - 4.5% of net assets.

(11) The calculation presented above does not include the incentive allocation of profits paid to Portfolio Fund managers, which represents 20% of new net profits from each of the Portfolio Funds.  Such incentive fees are charged after deducting all expenses.

(12) Brokerage Fees reflect commissions and fees paid by Portfolio Funds.

(13) Portfolio Funds may borrow to purchase investments, including by means of margin transactions, in which securities are purchased pursuant to a loan, the securities are held as collateral by a broker, and interest is charged on the loan.

(14) The Portfolio Funds earn interest on fixed income securities and on cash held and margin deposits with brokers.

## SELECTION OF BROKERS AND DEALERS

The General Partner and the Investment Advisers will be entitled to select, in their sole discretion, the brokers (including brokers affiliated with the General Partner or an Investment Adviser) which will effect transactions for the Partnership with respect to the assets managed thereby.  Such Brokers will be paid brokerage commissions from the Partnership at levels to be determined by the General Partner or an Investment Adviser, as the case may be.  In effecting transactions for the Partnership, the General Partner and each Investment Adviser may select a broker or brokers who, in recognition of commissions received on transactions from the Partnership and other accounts managed by the General Partner or Investment Adviser, are willing to provide brokerage, research and other services, even though the Partnership may not, in any particular instance, be the direct or indirect beneficiary of the research or other services provided and even though commissions to such broker or brokers may exceed commissions that another broker or brokers would charge in effecting transactions for the Partnership, if the General Partner or Investment Adviser determines in good faith that the commission is reasonable in relation to the value of the brokerage, research and other services provided by such broker or brokers.  This determination may be made by the General Partner or Investment Adviser either as to the particular transaction or as to all accounts with respect to which the General Partner or Investment Adviser exercises investment discretion.  However any transactions effected through an affiliated broker will be subject to obtaining best price and execution for the trade.

The Partnership may purchase securities from or sell securities to brokerage clients of affiliated broker-dealers (i.e., agency cross transactions).  The affiliated broker-dealer will receive commissions from both parties to the transaction and the General Partner or Investment Adviser, and the affiliated broker-dealer, may have potentially conflicting divisions of loyalties and responsibilities regarding both parties to the transaction.

In the case of securities traded on a principal basis, transactions are effected on a "net," rather than a transaction charge basis, with dealers acting as principal for their own accounts without a stated transaction charge.  Accordingly, the price of the security may reflect an increase or decrease from the price paid by the dealer together with a spread between the bid and asked prices, which provides the opportunity for a profit or loss to the dealer.  Principal transactions will not be effected through affiliates of the General Partner or an Investment Adviser.

CONCLUSION

      The General Partner will be available, during the course of the Offering and prior to a prospective purchaser's execution of the Partnership Agreement, to respond to any questions such purchaser may have.  The General Partner will also provide, or assist a prospective purchaser in obtaining, any additional information necessary to permit verification of the accuracy of all information contained in this Offering Memorandum, to the extent that the General Partner possesses such information or can acquire it without unreasonable effort or expense.