# FM MULTI-STRATEGY INVESTMENT FUND, L.P.

## LIMITED PARTNERSHIP

## AGREEMENT

Amended and Restated
Effective as of April 1, 2004

December 2006

# TABLE OF CONTENTS

Page

DEFINED TERMS ............................................................................................................... iii

ARTICLE I          General Provisions ................................................................................. 1

Section 1.01.          Formation ............................................................................. 1
Section 1.02.          Partnership Name ................................................................. 1
Section 1.03.          Term ..................................................................................... 1
Section 1.04.          Principal Office; Registered Office and Agent For
                       Service of Process ............................................................... 1
Section 1.05.          Fiscal Year............................................................................ 2
Section 1.06.          Purposes and Powers of Partnership ................................... 2
Section 1.07.          Limitations on Powers.......................................................... 3
Section 1.08.          Liability of Partners............................................................. 3

ARTICLE II         Management............................................................................................ 3

Section 2.01.          Management and Authority of General Partner. .................. 3
Section 2.02.          Powers of Limited Partners .................................................. 4
Section 2.03.          Reliance by Third Parties ..................................................... 4
Section 2.04.          Activities of the General Partner and Affiliates. ................. 4
Section 2.05.          Indemnification of the General Partner. ............................... 5
Section 2.06.          General Partner Compensation............................................. 6
Section 2.07.          Expenses................................................................................ 6

ARTICLE III        Capital Accounts of Partners and Operation Thereof ........................... 7

Section 3.01.          Capital Contributions. .......................................................... 7
Section 3.02.          Capital Accounts. .................................................................. 8
Section 3.03.          General Partner's Net Worth ................................................ 8
Section 3.04.          Partnership Percentages........................................................ 8
Section 3.05.          Net Asset Value, Net Gain and Net Loss. ........................... 8
Section 3.06.          Valuation of Securities.......................................................... 9
Section 3.07.          Economic Allocations  Net Gains and Net Losses
                       shall be allocated among the Partners as follows: .............. 9
Section 3.08.          Allocations for Tax Purposes. .............................................. 10
Section 3.09.          Determination by General Partner of Certain Matters .......... 10
Section 3.10.          Adjustment of Basis of Partnership Property ...................... 10
Section 3.11.          Taxes Withheld .................................................................... 10

ARTICLE IV         Participation in Partnership Property ..................................................... 11

Section 4.01.          Ownership of Partnership Property ...................................... 11
Section 4.02.          Loans and Withdrawals of Capital in General ..................... 11
Section 4.03.          Voluntary and Involuntary Withdrawals of Capital. ........... 11
Section 4.04.          Distributions of Excess Cash................................................ 12

ARTICLE V          Admission of New Partners ................................................................... 12

December 2006

Section 5.01.          New Partners. ....................................................................................... 12

ARTICLE VI      Withdrawal, Death or Insanity of Partners.................................................. 13

Section 6.01.          Withdrawal of General Partner......................................................... 13
Section 6.02.          Withdrawal, Death or Insanity of Limited Partner .......................... 13
Section 6.03.          Limitation of Rights After Notice .................................................... 13
Section 6.04.          Limitations on Withdrawal................................................................ 13

ARTICLE VII     Termination of Partnership; Transfers ........................................................ 13

Section 7.01.          Dissolution. ....................................................................................... 13
Section 7.02.          Distributions Upon Termination ....................................................... 14
Section 7.03.          Transfer of a Limited Partner's Interest;
                        Withdrawal of a Limited Partner....................................................... 14
Section 7.04.          Limitations on Transfer ..................................................................... 15

ARTICLE VIII    Reports to Partners ..................................................................................... 15

Section 8.01.          Independent Auditors ........................................................................ 15
Section 8.02.          Reports to Current Partners. .............................................................. 15
Section 8.03.          Reports to Current and Former Partners............................................ 16

ARTICLE IX      Miscellaneous ............................................................................................ 16

Section 9.01.          General ............................................................................................... 16
Section 9.02.          Power of Attorney ............................................................................. 16
Section 9.03.          Amendments to Partnership Agreement............................................ 17
Section 9.04.          Notices............................................................................................... 17
Section 9.05.          Compliance with the Rules of Fair Practice
                        of the National Association of Securities Dealers............................. 17
Section 9.06.          Tax Matters Partner. .......................................................................... 18
Section 9.07.          Entire Agreement .............................................................................. 19
Section 9.08.          Further Information and Documents .................................................. 19
Section 9.09.          Gender ................................................................................................ 19
Section 9.10.          Captions.............................................................................................. 19

ii

LOCATION OF

DEFINED TERMS

| Term | Section Reference |
|------|-------------------|
| Accountant | 8.01 |
| Accounting Period | 2.07 |
| Additional Capital Contributions | 3.01 |
| Affiliates | 2.04 |
| Benefit Plan Investors | 3.01 |
| Capital Contributions | Preamble |
| Capital Account | 3.02 |
| Closing Date | 1.03 |
| Code | 3.08 |
| Disposition | 7.03 |
| Distribution | 4.04 |
| ERISA | 3.01 |
| Effective Date | 4.03 |
| Excess Cash | 4.04 |
| Expense Allowance | 2.07 |
| 2790 Rules | 9.05 |
| GAAP | 3.09 |
| General Partner | Preamble |
| New Issues | 9.05 |
| ICA | 2.04 |
| Incentive Allocation | 3.07 |
| Initial Capital Contribution | 3.01 |
| Investment Advisers | 1.06 |
| Limited Partner | Preamble |
| Liquidating Agent | 7.01 |
| Loan Participations | 1.06 |
| Management Fee | 2.06 |
| NASD | 9.05 |
| Net Asset Value | 3.05 |
| Net Gain | 3.05 |
| Net Loss | 3.05 |
| Notice Period | 4.03 |
| Offering Memorandum | 3.01 |
| Partner(s) | Preamble |
| Partnership | Preamble |
| Partnership Act | Preamble |
| Partnership Percentage | 3.04 |
| Pass-Thru Partner | 9.06 |
| Person | 3.01 |
| Restricted Partner | 9.05 |
| Restricted Partnership | 9.05 |

December 2006

| Term | Section Reference |
|------|-------------------|
| Schedule | Preamble |
| Securities | 1.06 |
| Tax Matters Partner | 9.06 |
| Withdrawn Share | 4.03 |

iv

**FM MULTI-STRATEGY INVESTMENT FUND, L.P.**

**LIMITED PARTNERSHIP AGREEMENT**

**AMENDED AND RESTATED AS OF APRIL 1, 2004**

**THIS LIMITED PARTNERSHIP AGREEMENT** is amended and restated as of the date and year first written above by and among Family Management Corporation, a New York corporation (the "General Partner"), and each of the investors who executes a Limited Partner Signature Page (each, a "Limited Partner" or collectively hereinafter referred to as "Limited Partners") to form a limited partnership (the "Partnership") pursuant to the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §17-101 et seq. (the "Partnership Act"), which shall be governed by and operated pursuant to the terms and provisions hereinafter set forth. The term "Partner" or "Partners", when used in this Agreement without qualification by the words "General" or "Limited" shall be deemed to include both the General Partner and the Limited Partners. The amount of each Partner's initial contributions of cash or Securities to the Partnership (hereinafter referred to as "Capital Contributions") is set forth with respect to each Partner on a separate schedule hereto, all of which schedules shall be maintained by the General Partner but shall not be distributed to the Partners and shall be referred to together herein as the "Schedule."

**WHEREAS,** the Partners desire to enter into this Limited Partnership Agreement for the purpose of admitting the Limited Partners as Limited Partners of the Partnership and setting forth the rights, duties and obligations of the Partners of the Partnership.

**NOW THEREFORE,** the parties hereto hereby covenant and agree as follows:

## ARTICLE I

### General Provisions

**Section 1.01.**    **Formation**. The Partners do hereby form the Partnership as a limited partnership pursuant to the Partnership Act.

**Section 1.02.**    **Partnership Name**. The name of the Partnership is **FM MULTI-STRATEGY INVESTMENT FUND, L.P.** However, the business of the Partnership may be conducted, upon compliance with all applicable laws, under any other name designated in writing by the General Partner to the Limited Partners.

**Section 1.03.**    **Term**. The term of the Partnership shall commence on the date that the General Partner receives subscriptions for Partnership interests from Limited Partners in an aggregate required amount, as determined by the General Partner in its sole discretion (the "Closing Date") and shall continue until terminated pursuant to Section 7.01 hereof.

**Section 1.04.**    **Principal Office; Registered Office and Agent For Service of Process**. The principal place of business of the Partnership shall be 485 Madison Avenue, 19th Floor, New York, New York 10022 or at such other place as may be designated, from time to time, by the General Partner in writing to the Limited Partners. The registered office of the Partnership shall be 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 and the registered agent shall be Corporation Service Company.

**Section 1.05.**    **Fiscal Year**. The fiscal year of the Partnership shall end on December 31 of each year.

**Section 1.06.**    **Purposes and Powers of Partnership**. The Partnership is organized for the purpose of investing Partnership assets in Securities and managing such investments for the mutual benefit of the Partners. To this end, the General Partner shall allocate Partnership assets among various specialized investment managers ("Investment Advisers") based upon the General Partner's evaluation of such managers and relevant market conditions and economic trends. In addition, the General Partner may, in its discretion, invest up to 60% of the Partnership's assets directly. Without limiting the generality of the foregoing, and subject to the limitations set forth in Section 1.07, the Partnership shall have the following powers:

(a) To invest and trade, on margin, "long," "short" or otherwise, as applicable, in the capital stock or evidences of indebtedness (including, without limitation, bonds, notes and debentures) of any domestic or foreign corporations, secured and unsecured loan participation interests ("Loan Participations"), American Depositary Receipts, futures, options (including covered and naked put and call options), indexes, trust receipts and other obligations, instruments or other evidences of equity or indebtedness commonly referred to as "securities" or otherwise defined as such within the meaning of Section 2(1) of the Securities Act of 1933, as amended (hereinafter sometimes collectively referred to as "Securities");

(b) To engage in any and all forms of arbitrage including, without limitation, (i) "classical" or "riskless arbitrage", and (ii) "risk arbitrage";

(c) To purchase, sell, possess, transfer, lease, license, mortgage, pledge or otherwise deal in, and to exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Securities and other property with the ultimate objective of the preservation, protection, improvement and enhancement in the overall value thereof;

(d) To borrow or solicit the equity contribution of monies and, from time to time without limit as to amount, to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment of any principal amount thereof and of the interest thereon by mortgage upon or pledge, conveyance or assignment in trust of the whole or any part of the property of the Partnership, whether at the time owned or thereafter acquired, and to sell, pledge or otherwise dispose of such bonds or other obligations of the Partnership for its purposes;

(e) To have and maintain one or more offices within or without the State of Delaware and in connection therewith to rent or acquire office space, engage personnel and do such other acts and things as may be necessary or advisable in connection with the maintenance of such office or offices;

(f) To hold uninvested funds in, and open, maintain, and close bank accounts, including, without limitation, the power to draw checks or other orders for the payment of monies;

(g) To engage Investment Advisers on behalf of the Partnership, to compensate such Investment Advisers out of Partnership funds, and to enter into such agreements in connection with the retention of Investment Advisers as the General Partner deems appropriate;

(h) To select (and to authorize Investment Advisers to select) brokers and dealers (including brokers which are Affiliates of the General Partner or an Investment Adviser, and who may engage in agency cross transactions) which will effect transactions for the Partnership with respect to

2

Partnership assets managed thereby and to pay brokerage commissions for such services out of Partnership funds; and

(i) To take any and all actions and to enter into, make and perform all contracts, agreements and other undertakings as may be necessary or advisable or incident to the carrying out of the foregoing purposes and powers.

**Section 1.07.**      **Limitations on Powers**. Notwithstanding anything to the contrary contained in this Agreement, the Partnership shall not:

(a) Allocate Partnership assets to fewer than three Investment Advisers for management;

(b) Allocate more than 33-1/3% of Partnership assets to any one Investment Adviser for management; provided that this calculation shall be made at the time assets are allocated to the Investment Adviser; and provided further that the General Partner may manage up to 60% of Partnership assets; or

(c) Invest more than 10% of its Net Asset Value in illiquid securities (which shall not be deemed to include restricted securities).

**Section 1.08.**      **Liability of Partners**.

(a) The Limited Partners shall be liable for the repayment and discharge of all debts and obligations of the Partnership only to the extent of their respective Capital Accounts and shall not otherwise have any liability in respect of the debts and obligations of the Partnership or be obligated to make Additional Capital Contributions to the Partnership.

(b) The Limited Partners shall share, up to the limit of their respective Capital Accounts, all losses, liabilities or expenses suffered or incurred by virtue of the operation of the immediately preceding paragraph of this Section 1.08 in the proportions of their respective Partnership Percentages for the month to which any such losses, liabilities or expenses are attributable.

## ARTICLE II

## Management

**Section 2.01.**      **Management and Authority of General Partner**.

(a) The General Partner shall have full and complete charge of all affairs of the Partnership, and the management and control of the Partnership's business and its assets (including, without limitation, any Securities acquired by the Partnership) shall rest exclusively with the General Partner, subject to the terms and conditions set forth in this Agreement. The General Partner shall have all of the rights and powers of a general partner as provided under the Partnership Act and as otherwise provided by law and any action taken by the General Partner shall constitute the act of, and serve to bind the Partnership. The General Partner hereby agrees to use its best efforts in connection with the purposes of the Partnership and to devote to such purposes such of its time and activity during normal business days and hours as in its judgment it deems necessary for the management of the affairs of the Partnership.

(b) In addition to, and not in limitation of the general powers herein conferred upon it, the General Partner is expressly authorized to sign all contracts and assume direction of all business operations on behalf of the Partnership, including, without limitation, the execution of checks, drafts and

3

other orders for the payment of Partnership funds.  The General Partner shall further have the power to act on behalf of the Partnership, including, without limitation, (i) to engage Investment Advisers on behalf of the Partnership to manage partnership assets (ii) to sell, assign or otherwise dispose of any of the Partnership's assets on such terms and conditions as the General Partner may determine; (iii) to hold uninvested funds in, and to open, maintain and close brokerage accounts (including, without limitation, margin accounts and money market accounts, whether or not insured); (iv) to hold uninvested funds in, and to open, maintain and close bank accounts, including, without limitation, money market accounts, whether or not insured; (v) to borrow funds or Securities for the conduct of Partnership business and to mortgage, pledge, assign or otherwise hypothecate any one or more of the Partnership's properties or assets (including, without limitation, the Securities) to secure any such borrowing on behalf of the Partnership; (vi) to compromise and settle any claims made by or against the Partnership; (vii) to hold Securities in nominee or street name; (viii) to make all investment and trading decisions with respect to the acquisition and/or disposition of Securities or other types of investments permitted hereunder; (ix) to incur obligations for and on behalf of the Partnership in connection with its business; (x) to employ such agents, brokers, traders, consultants, advisors, employees, attorneys and accountants as it deems appropriate and necessary to the conduct of the Partnership; (xi) to commence or defend any litigation involving the Partnership or the General Partner in its capacity as general partner and to retain legal counsel in connection therewith; (xii) to obtain insurance for the proper protection of the Partnership and/or the Partners; (xiii) to take any and all actions which it, in its sole discretion, deems necessary or advisable relating to the foregoing; (xiv) and, generally, to act for the Partnership in all matters consistent with those powers stated in Section 1.06.

(c)  The General Partner shall cause the Schedule to be amended to reflect the admission of any new Limited Partner, the termination of any Limited Partner's interest in the Partnership, any Additional Capital Contributions made by a Partner, any withdrawal of capital by a Partner from his or its Capital Account, any change in the name of the Partnership or a Partner, and the receipt by the Partnership of any notice of change of address of a Partner.  The Schedule, as amended from time to time, shall be kept on file at an office of the Partnership and shall supersede all prior unamended versions thereof.

**Section 2.02.**       **Powers of Limited Partners**.  The Limited Partners shall have only the powers specifically enumerated herein and shall not have any control over the business or operation of the Partnership or any power to bind the Partnership or a Partner.  Except as provided in this Agreement, no Limited Partner shall take part in or have any voting rights with respect to the conduct or control of any aspect of the Partnership's business or the right to remove or replace the General Partner.

**Section 2.03.**       **Reliance by Third Parties**.  Persons dealing with the Partnership are entitled to rely conclusively upon a certificate of the General Partner to the effect that it is then acting as the General Partner and thereby has authority to bind the Partnership.

**Section 2.04.**       **Activities of the General Partner and Affiliates**.

(a)  Nothing contained in this Agreement shall preclude the General Partner or any of its affiliates ("Affiliates"), as defined in the Investment Company Act of 1940, as amended ("ICA"), from, or require such persons to account to any other person, including the Partnership and any Partner for, engaging in, acquiring or possessing an interest, directly or indirectly, any other present or future business ventures or investments, of any nature whatsoever, for its own account or for the account of others, including, without limitation, engaging, acquiring or possessing an interest, directly or indirectly, in any other present or future business ventures or investments which would be permissible or desirable business ventures or investments for the Partnership or are currently held or owned by the Partnership,

4

acting as a broker, finder or director, officer or employee of, or consultant to any corporation, a trustee to any trust, a limited partner or general partner in any partnership, an administrative official of any business entity, or from receiving compensation for services as an adviser with respect to, or participating in, profits derived from the investments of any such corporation, trust, partnership or other business entity. No Limited Partner shall have any right to participate, in any manner whatsoever, in any profits or income earned or derived by the General Partner or its Affiliates in their conduct of any business other than the business of the Partnership. The General Partner shall not be required or deemed to have the duty to obtain the lowest brokerage or commission rates or combine or arrange orders to obtain the lowest brokerage commission rates on Partnership brokerage business including, without limitation, portfolio transactions.

(b) The General Partner and its Affiliates may also render investment advisory and other services to other Persons with respect to Securities and other investments identical or similar to, or competitive with, those in which the Partnership invests or otherwise acquires.

Section 2.05.    **Indemnification of the General Partner**.

(a) Except to the extent otherwise mandated by any applicable state or federal regulation or common law, pursuant to which the waiver described in this paragraph may be deemed void in whole or in part, the General Partner shall not be liable, responsible or accountable, in damages or otherwise, to the Partnership or to any Limited Partner for any loss, claim or damage arising out of, or in connection with its acting as General Partner, or its contracting for the services of employees, brokers or agents, except by reason of acts or omissions found by a court of competent jurisdiction, upon entry of a final judgment, to be due to bad faith, fraud, gross negligence, or reckless or intentional misconduct, or actions found to have been taken without reasonable belief that such actions were properly authorized by this Agreement. The General Partner shall in no event be liable to the Partnership or any Limited Partner for any of the foregoing liabilities if its disputed action or inaction was based upon the advice or opinion of attorneys or accountants, provided that such attorneys or accountants were selected with reasonable care.

(b) The General Partner shall not be liable for the return or payment of all or any portion of the capital or profits allocable to any Limited Partner (or any permitted assignee or transferee thereof), it being expressly agreed that any such return of capital or payment of profits made pursuant to this Agreement shall be made solely from the assets of the Partnership (which shall not include any right of contribution from the General Partner).

(c) The Partnership shall indemnify, defend and hold harmless the General Partner, its Affiliates and, in the discretion of the General Partner, the Partnership's agents, employees, advisers and consultants from and against any loss, liability, fees (including, without limitation, attorneys' fees) and damages arising as a result of business or activities undertaken on behalf of the Partnership, including, without limitation, any demands, claims or lawsuits initiated by a Limited Partner or resulting from or relating to the offer and sale of an interest in the Partnership, provided that the acts or omissions of the General Partner or others are not found by a court of competent jurisdiction, (i) upon entry of a final judgment, to be the result of bad faith, fraud, gross negligence, or reckless or intentional misconduct, (ii) to have violated such lesser standard of conduct as under applicable law prevents indemnification hereunder, or (iii) actions found by a court of competent jurisdiction, upon entry of a final judgment, to have been taken without reasonable belief that such actions were properly authorized by this Agreement.

(d) The General Partner shall be entitled to receive advances to cover the cost of defending any claim or action against it; provided, however, that such advances shall be repaid to the Partnership if the General Partner is found by a court of competent jurisdiction, upon entry of a final

judgment, to have violated any of the standards set forth in paragraph (c) above. All rights of the General Partner and others to indemnification shall survive the dissolution of the Partnership and the withdrawal, declaration of legal incapacity, dissolution or bankruptcy of the General Partner.

Section 2.06.     **General Partner Compensation**. The General Partner shall be entitled to receive from the Partnership a management fee ("Management Fee") in an annual amount equal to 1.00% of the Net Asset Value, payable in arrears on the last day of each quarter during the term of this Partnership. For purposes of determining the Management Fee payable each quarter, the Net Asset Value as of the first day of each month during the applicable period shall be multiplied by 0.08333% and the Management Fee due the General Partner shall be the sum of the amounts so determined.

Section 2.07.     **Expenses**.

(a) The Partnership shall pay to the General Partner as an expense allowance ("Expense Allowance") an annual amount equal to 0.40% of the Net Asset Value, payable in advance on the first day of each Accounting Period during the term of this Partnership. For purposes of determining the Expense Allowance, the Net Asset Value as of the first day of the Accounting Period shall be multiplied by 0.03333% if such Accounting Period in question is a full month or, by a proportionate part thereof determined by comparing the number of days in the Accounting Period and 30 days if such Accounting Period is less than 30 days.

"Accounting Period" means the period beginning on the day immediately succeeding the last day of the immediately preceding Accounting Period (or, in the case of the first Accounting Period, the Closing Date) and ending on the earliest of (i) the last day of each calendar month, (ii) the day immediately preceding the day on which an Additional Capital Contribution is made to a Partner's Capital Account, (iii) the day on which an Initial Capital Contribution is accepted by the General Partner, (iv) the Effective Date of any withdrawal from the Partnership, and (v) the date on which the Partnership terminates.

(b) The following expenses incurred by the Partnership shall be borne directly by the Partnership:

(i)     All taxes, including, without limitation, federal, state, local, foreign, issue and transfer taxes;

(ii)     All interest charged on monies borrowed in connection with the Partnership including, without limitation, positions held on margin;

(iii)     All auditing expenses incurred in connection with the Partnership;

(iv)     All legal fees and expenses;

(v)     All accounting fees and expenses;

(vi)     All brokerage fees and commission expenses or other expenses of transactions and expenses of tendering for Securities;

(vii)     All fees payable to Investment Advisers engaged on behalf of the Partnership;

6

(viii)   All expenses not in the ordinary course of business incurred in connection with the operation of the Partnership, including, without limitation, (A) litigation expenses, including expenses of litigation in connection with any portfolio investment, (B) expenses of registering the Partnership (but not the General Partner) with any federal or state agency under the requirements of any applicable law, including without limitation, the ICA and the Commodity Exchange Act, as amended, and (C) expenses incurred in connection with the indemnification of the General Partner and any other Person hereunder; and

(ix)    All fees and expenses payable in connection with the organization of the Partnership and the sale of interests therein.

(c)   Notwithstanding anything to the contrary contained in subsection (b) of this Section 2.07 (and without duplication) (i) the Partnership shall reimburse the General Partner for any expenses incurred by the General Partner on behalf of the Partnership and (ii) the legal, accounting and state securities or "blue sky" filing fees relating to the organization of, or offering of interests in, the Partnership shall initially be borne by the General Partner and upon demand, reimbursed to the General Partner by the Partnership, subject to the limitation set forth in Section 2.07(b)(ix).

## ARTICLE III

### Capital Accounts of Partners and Operation Thereof

**Section 3.01.**      **Capital Contributions**.

(a)   Each Partner shall pay cash, or, if acceptable to the General Partner, convey by way of contribution to the Partnership Securities having an aggregate value equal to the amount set forth opposite such Partner's name in the Schedule and in accordance with the terms and conditions of the offering memorandum of the Partnership, dated January 1, 1995, as it may have been supplemented or amended (the "Offering Memorandum"). Unless otherwise determined by the General Partner, in its absolute discretion, the initial Capital Contribution ("Initial Capital Contribution") of any Limited Partner shall be in an amount which is not less than $250,000. Additional capital contributions of cash and/or marketable Securities may be made by Partners on and as of the first day of any month, or at such other times as the General Partner shall determine. Unless otherwise determined by the General Partner, in its absolute discretion, any Capital Contribution by a Limited Partner which is subsequent to his Initial Capital Contribution shall have an aggregate value not less than $100,000 ("Additional Capital Contributions").

(b)   Notwithstanding anything to the contrary contained herein, the General Partner shall have the authority and absolute discretion, in any order of priority, to reject for any reason whatsoever the Securities of any Person or the Capital Contribution of any Person, including, the Capital Contribution of any (i) Person, which by virtue of such Capital Contribution, would cause the Partnership to be deemed an "investment company" under the ICA, and (ii) "Benefit Plan Investors," which by virtue of such Capital Contribution would cause the properties or assets of the Partnership to be deemed "plan assets" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). For purposes of this Agreement, (i) "Person" shall include an individual, partnership, corporation, business trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature, including, without limitation, "Benefit Plan Investors," and (ii) "Benefit Plan Investors" shall include (A) an "employee benefit plan," as defined in ERISA, whether or not subject to ERISA, (B) all Individual Retirement Accounts, and (C) all entities whose underlying assets include "plan assets" within the meaning of ERISA.

(c) (i)    Each Limited Partner who contributes Securities to the Partnership hereby consents and agrees to pay to the Partnership, if so requested, concurrently with the making of such contribution and as a further capital contribution, or, alternatively, to have deducted from the value of such Securities, an amount, as the General Partner may determine, to cover all costs in connection with holding, transferring and/or selling such Securities.

(ii)    Each Limited Partner who contributes Securities to the Partnership will, prior to the date of any such contribution, furnish to the Partnership evidence as to his date(s) of acquisition of such Securities and his adjusted basis therein for income tax purposes. Any gain or loss realized during any fiscal year by the Partnership from the sale of any contributed Securities shall, for income tax purposes, be allocated among the contributing Limited Partner and all of the Partners (including such contributing Limited Partner) as follows:

(A)    Any such gain or loss attributable to the difference between the contributing Partner's adjusted basis for such Securities and the market value thereof at the time of their contribution shall be allocated to such contributing Partner; and

(B)    Any such gain or loss attributable to the difference between the market value of such Securities at the time of their contribution and the proceeds realized by the Partnership from the sale thereof shall be allocated among all of the Partners (including such contributing Partner) in accordance with the provisions of this Agreement.

**Section 3.02.    Capital Accounts.**

(a) There shall be established for each Partner on the books of the Partnership as of the first day of each Partner's admission to the Partnership, an account (the "Capital Account") reflecting an amount equal to its Initial Capital Contribution, which account shall be adjusted for each Accounting Period to reflect any Additional Capital Contributions, withdrawals of capital by such Partner and/or its allocable share of Net Gain and Net Loss of the Partnership.

(b) The General Partner shall make such contributions to the capital of the Partnership from time to time as necessary to maintain its Capital Account at an amount greater than or equal to the lesser of (i) 0.25% of the total positive Capital Account balances of the Partnership (including the Capital Account of the General Partner) and (ii) $250,000.

**Section 3.03.    General Partner's Net Worth.** The General Partner shall at all times maintain a net worth (exclusive of the value of its Capital Account) at a level which is adequate to enable it to conduct the activities and business in which it is engaged.

**Section 3.04.    Partnership Percentages.** A partnership percentage ("Partnership Percentage") shall be determined for each Partner, as of the first day of each Accounting Period and the last day of each fiscal year, by dividing the amount of each Partner's Capital Account by the sum of all of the Partners' Capital Accounts for such Accounting Period. The sum of the Partnership Percentages shall equal 100%. The Partnership Percentages shall be set forth in a schedule which shall be filed with the records of the Partnership.

**Section 3.05.    Net Asset Value, Net Gain and Net Loss.**

(a) A "Net Asset Value" shall be calculated as of the end of each month based upon unaudited information (and adjusted retroactively on an annual audited basis). The Net Asset Value shall be equal to the difference between:

8

(i)      the value of all assets of the Partnership, including, but not limited to, Securities, cash, receivables, prepaid expenses and deferred charges and fixed assets, less appropriate provision for depreciation or amortization; and

(ii)      the amount of all liabilities of the Partnership and all proper reserves with respect thereto, including, without limitation, notes and accounts payable and accrued expenses.

(b) After appropriate adjustments to eliminate the effects of contributions, distributions and withdrawals, "Net Gain" shall mean an increase in Net Asset Value and "Net Loss" shall mean a decrease in Net Asset Value.

**Section 3.06.      Valuation of Securities.**  For purposes of valuing Securities in connection with the business of the Partnership, including, without limitation, valuing Securities contributed by Limited Partners as Initial Capital Contributions or Additional Capital Contributions and determining Net Asset Value pursuant to Section 3.05 hereof, (i) Securities listed on national securities exchanges shall be valued at (a) their last sales prices on the relevant date, or (b) if no sales occurred on such date, at the mean of the "bid" and "asked" prices on such date; (ii) Securities not listed on a national securities exchange shall be valued at their last closing "bid" price on the date of the determination if held "long" and their last closing "asked" price if held "short", and (iii) all other Securities shall be valued by the General Partner or an Investment Adviser in good faith and in its sole and absolute discretion pursuant to this Section 3.06 which valuation shall be final and conclusive as to all of the Partners.  Notwithstanding anything to the contrary contained in the foregoing sentence, for purposes of this Section 3.06, in the sole discretion of the General Partner, the Securities of the Partnership may be valued, from time to time, by and in accordance with the methods employed by, a pricing service or services, selected from time to time by the General Partner in its sole and absolute discretion.

**Section 3.07.      Economic Allocations.**  Net Gains and Net Losses shall be allocated among the Partners as follows:

(a) Subject to paragraphs (b) and (c) of this Section 3.07, as of the close of business on the last day of each Accounting Period, allocations shall be made among the Partners in accordance with their respective Partnership Percentages at the beginning of the Accounting Period in question.

(b) The Management Fee expense of the Partnership shall be allocated among the Partners and charged to the Capital Accounts upon which the payment obligation is based.

(c) (i)      As of the end of each fiscal year, to the extent Net Gain allocated to a Limited Partner pursuant to paragraph (a) of this Section 3.07 for the fiscal periods during a fiscal year exceeds the sum of Net Loss and Management Fee expense allocated to the Limited Partner pursuant to paragraphs (a) and (b) of this Section 3.07 for the fiscal periods during the fiscal year, 10% of such excess shall be reallocated to the General Partner (the "Incentive Allocation").

(ii)      In the event of a Limited Partner's voluntary or involuntary withdrawal of capital from the Partnership as of a date other than the end of a fiscal year, the Incentive Allocation shall be charged to the Capital Account of the withdrawing Limited Partner as of the Effective Date of any such withdrawal as the General Partner determines is necessary to assure a proper accounting and allocation of Net Gain and Net Loss in accordance herewith.

(iii)      The General Partner may, from time to time, waive its entitlement to the Incentive Allocation in whole or in part, with respect to one or more Limited Partners.

(iv)   Notwithstanding the foregoing provisions of this Section 3.07(c), no Limited Partner that became a Limited Partner on or before November 1, 1999, shall become subject to the Incentive Allocation until January 1, 2001.

**Section 3.08.       Allocations for Tax Purposes.**

(a)  In each fiscal year, items of income, deduction, gain, loss, or credit that are recognized for tax purposes shall be allocated among the Partners, both General and Limited, in such manner as reflects equitably amounts credited or debited to each Partner's Capital Accounts for the current and prior fiscal years.  Such allocations shall be made pursuant to the principles of Section 704(c) of the Internal Revenue Code of 1986, as amended (the "Code"), and in conformity with Regulations Sections 1.704-1(b)(2)(iv)(f) and 1.704-1(b)(4)(i) promulgated thereunder, or successor provisions to such provisions.  The Partnership shall establish and maintain records which shall reflect the extent to which the closing Capital Account of each Partner shall, at the end of each fiscal year of the Partnership, be comprised of amounts which have not been reflected in the taxable income of such Partner.

(b)  If the Partnership realizes net gains for federal income tax purposes for any fiscal year during or as of the end of which one or more Partners whose Capital Accounts reflect unrealized gains withdraw from the Partnership pursuant to Articles IV or VI of this Agreement, the General Partner may elect to allocate such realized net gains as follows: (i) To allocate such realized net gains among such withdrawing Partner(s), pro rata in proportion to the amount of unrealized gains reflected in his or their Capital Accounts until either the full amount of such realized gains have been so allocated or the unrealized gains have been eliminated; and (ii) To allocate any realized net gains not so allocated to the other Partners in such manner as shall reflect equitably the amounts credited to such Partners' Capital Accounts.

**Section 3.09.       Determination by General Partner of Certain Matters**.  All matters concerning the determination of Net Asset Value, the valuation of Securities for any reason whatsoever, the allocation of profits, gains and losses among the Partners, including the taxes thereon, and accounting procedures not specifically and expressly provided for by the terms of this Agreement, shall be determined by the General Partner, whose determination shall be final and conclusive as to all of the Partners.  Notwithstanding anything to the contrary contained in this Agreement, to the extent that generally accepted accounting principles ("GAAP") and/or the Code, the rules and regulations promulgated thereunder and practices and procedures of the Internal Revenue Service shall be inconsistent with any provisions of this Agreement, GAAP, the Code, its rules and regulations, the practices and procedures of the Internal Revenue Service shall govern.

**Section 3.10.       Adjustment of Basis of Partnership Property**.  In the event of a distribution of Partnership property to a Partner or an assignment or other transfer (including by reason of death) of all or part of the interest of a Partner in the Partnership, at the request of a Partner, the General Partner, in its discretion, may cause the Partnership to elect, pursuant to Section 754 of the Code, or the corresponding provision of subsequent law, to adjust the basis of the Partnership property as provided by Sections 734 and 743 of the Code.

**Section 3.11.       Taxes Withheld**.  The General Partner may withhold taxes attributable to any Partner to the extent required under the Code or Treasury Regulations.  For purposes of this Agreement, any taxes so withheld by the Partnership shall be deemed to be a distribution or payment to such Partner and shall reduce the amount otherwise distributable to each Partner pursuant to this Agreement.

10

## ARTICLE IV

## Participation in Partnership Property

**Section 4.01.**    **Ownership of Partnership Property**.  Each Partner shall have and own during any month an undivided interest in the Partnership equal to his Partnership Percentage for such month.  Title to marketable Securities contributed as a Capital Contribution shall vest in the Partnership and each such contributing Limited Partner retains no right to the ownership (beneficial or otherwise) of such contributed Securities.

**Section 4.02.**    **Loans and Withdrawals of Capital in General**.  Except as provided in Sections 4.03, 4.04 and 6.01, or as determined by the General Partner, there shall be no distributions of cash, income, Securities or gains from the Partnership prior to its dissolution.  The Partnership shall not make loans to any Partner, whether General or Limited.

**Section 4.03.**    **Voluntary and Involuntary Withdrawals of Capital**.

(a)  Commencing one (1) year after a Limited Partner makes his Initial Capital Contribution, such Limited Partner shall have the right, upon sixty (60) days' prior written notice (or at such other times and in such manner as the General Partner permits in its sole discretion) (the "Notice Period") stating the amount to be withdrawn, to withdraw any amount of his Capital Account as of the close of business on the June 30 or December 31 next following the termination of such Notice Period (the "Effective Date"), so long as such notice was duly given; provided, however, that this right of withdrawal is subject to suspension, in the sole discretion of the General Partner, as necessary to effect an orderly liquidation of the Partnership's assets without unduly affecting the value of the Partnership's assets.

(b)  If the Capital Account of a Limited Partner seeking to withdraw capital from his Capital Account would by virtue of such withdrawal be reduced to less than $100,000, the General Partner may, in its absolute discretion, require such Limited Partner to withdraw from the Partnership. Notwithstanding anything contained in this Section 4.03 to the contrary, no Limited Partner shall be required to withdraw from the Partnership as a result of a decrease in its Capital Account solely by reason of its allocable share of Net Loss.

(c)  The General Partner may, in its absolute discretion, require any Limited Partner to withdraw from the Partnership upon thirty (30) days' written notice, or to withdraw all or any portion of its Capital Account to the extent necessary to prevent the (i) Partnership from being deemed an "investment company" and having to register as such under the ICA, or (ii) Partnership's properties or assets from being deemed "plan assets" within the meaning of ERISA.

(d)  Payments (such payments being referred to herein as the "Withdrawn Share") made pursuant to this Section 4.03 shall be made in cash, cash equivalents or Securities, in the discretion of the General Partner.  Subject to Section 6.04, ninety percent (90%) of any such Limited Partner's Withdrawn Share shall be paid by the Partnership to such Limited Partner within fifteen (15) days after the Effective Date, and the remaining balance of the Limited Partner's Withdrawn Share, shall be paid out (i), in the case of a withdrawal at any time other than as of December 31, within forty-five days after the effective date of withdrawal and (ii) in the case of a withdrawal as of December 31, coincident with the completion of the Partnership's annual audit which is expected to be on or about May 31 of the following year.  The unpaid balance due to Limited Partners withdrawing as of December 31 shall continue to accrue interest

11

at a rate of return (as determined by the General Partner in its sole discretion) from the 45th day following the effective date of withdrawal up to but excluding the day on which such balance is paid.

(e) Any withdrawal pursuant to this Section 4.03 shall be subject to an adjustment of such Limited Partner's Capital Account not in excess of 1% of the amount thereof, as the General Partner may, in its absolute discretion, determine to cover any and all costs incurred in selling Securities in order to fund the payment in cash of such withdrawal.

**Section 4.04.**      **Distributions of Excess Cash.**

(a) Any amount of cash which the General Partner does not expect, in its absolute discretion, to reinvest or otherwise use in the operation or business of the Partnership and that is available after the payment of all expenses then due, including, without limitation, the Management Fee and the Expense Allowance and the creation of reasonable reserves for expenses and liabilities (the "Excess Cash") may, in the General Partner's absolute discretion, be distributed at such time(s) and in such amounts as the General Partner, in its absolute discretion, shall determine.

(b) When and if distributed, Excess Cash shall be distributed (each such distribution being hereinafter referred to as a "Distribution") to the Partners in the following order of priority:

(i)      First, with respect to the first Distribution made during the first fiscal quarter of any year after the first fiscal year of the Partnership, to each Partner (including the General Partner) up to an amount (x) sufficient to allow each such Partner to discharge his estimated federal income tax liabilities in respect of his interest in the Partnership for the prior year based upon the assumption that each Partner will pay tax at a rate equal to the maximum individual Federal income tax rate in effect for the year in question; and (y) an additional amount not exceeding eight percent (8%) of each Partner's allocable share of net taxable items of the Partnership for such year (which may be used by the distributee thereof to satisfy all or a portion of his Partnership related state or local taxes in respect of his interest in the Partnership for such year); and

(ii)      Second, at any time and from time to time, the balance, if any, to the Partners (including the General Partner). Any Excess Cash distributed to the Partners (including the General Partner) in accordance with this clause (ii) shall be distributed in accordance with their respective Partnership Percentages.

## ARTICLE V

### Admission of New Partners

**Section 5.01.**      **New Partners.**

(a) On the first day of each calendar month, and at such other times as the General Partner may determine, the General Partner may, in its absolute discretion, admit one or more new Limited Partners; provided, however, that the General Partner may hold the initial closing of the sale of limited partnership interests on or following any day of the month (chosen by it) in which subscriptions aggregating a required amount, as determined by the General Partner in its sole discretion have been reached. Admission of a new Limited Partner shall not cause a dissolution of the Partnership. Unless otherwise determined by the General Partner, in its absolute discretion, the Initial Capital Contributions of such additional Limited Partners shall be made in cash and/or marketable Securities and shall be in an amount not less than $250,000. Upon admission to the Partnership, each new Limited Partner shall agree, by his execution and delivery to the General Partner of an instrument in form and substance satisfactory

12

to the General Partner, to be bound by and subject to all of the terms and conditions of this Agreement and to have ratified all prior Partnership acts.

(b) Upon the admission of a new Limited Partner, the computations to be made pursuant to the terms and provisions of Article III and IV (relating to Capital Accounts, Partnership Percentages, participation in profits and ownership in the Partnership) shall be proportionately adjusted as the General Partner may determine.

(c) The number and character of Limited Partners and the amounts of their respective Capital Contributions shall at no time exceed such number or amount as would cause the (i) Partnership to be required to register as an "investment company" under the ICA, or (ii) Partnership's properties or assets to be deemed "plan assets" within the meaning of ERISA.

## ARTICLE VI

### Withdrawal, Death or Insanity of Partners

**Section 6.01.**      **Withdrawal of General Partner**.  The General Partner shall not voluntarily withdraw from the Partnership prior to the termination thereof.

**Section 6.02.**      **Withdrawal, Death or Insanity of Limited Partner**.  The withdrawal, death or insanity of a Limited Partner shall not dissolve the Partnership.

**Section 6.03.**      **Limitation of Rights After Notice**.  Upon notice of complete withdrawal of a Limited Partner pursuant to Section 4.03(a), such Limited Partner shall continue as a Limited Partner until the Effective Date but shall have no further right to exercise any of the powers conferred herein and his sole right as a Limited Partner shall be to receive an amount equal to his Withdrawn Share in accordance with the provisions of Section 4.03. The interest of such Limited Partner shall not thereafter be included in calculating the interests of the Partners necessary to take any action provided for under this Agreement.

**Section 6.04.**      **Limitations on Withdrawal**.  The right of any Limited Partner or his legal representatives to have distributed the Withdrawn Share of any such Limited Partner pursuant to Article IV is subject to the provision by the General Partner for all Partnership liabilities, (i) to the extent such liabilities exceed the fair value of the assets of the Partnership, in accordance with Section 17-607 of the Partnership Act, (ii) or otherwise pursuant to this Agreement.  Such liabilities and reserves therefor shall be charged against and deducted from the Withdrawn Share, or Distributions, if any, in proportion to the aggregate Partnership Percentage of the affected Limited Partner as same was constituted immediately prior to the Effective Date.  Any portion of a Withdrawn Share withheld against Partnership liabilities shall be held in an interest bearing account at a bank or other depository institution chosen by the General Partner, in its absolute discretion, and interest earned thereon shall be paid to the withdrawn Limited Partner at the time of final distribution.  The right of withdrawal is also subject to suspension, in the discretion of the General Partner, as necessary to effect an orderly liquidation of the Partnership's assets without unduly affecting the value of the Partnership's assets.

## ARTICLE VII

### Termination of Partnership; Transfers

**Section 7.01.**      **Dissolution**.

13

(a)  The Partnership shall be dissolved:

(i)  Upon the withdrawal, declaration of legal incapacity, dissolution, or bankruptcy of the General Partner; or

(ii)  Upon election of the General Partner, upon at least ninety (90) days' prior written notice to the Limited Partners.

(b)  Upon dissolution of the Partnership, for any reason whatsoever, the Partnership shall continue in existence solely for the purpose of winding up its affairs and the property and business of the Partnership shall be liquidated (except as otherwise provided in Section 7.01(d)) by the General Partner or a liquidating agent (the "Liquidating Agent"), as determined by the General Partner.

(c)  Whether any assets of the Partnership shall be liquidated through sale or shall be distributed to the Partners in kind shall be determined by the General Partner or the Liquidating Agent, as the case may be.

(d)  Subject to Section 7.01(c), on or before the fifteenth (15th) day of each month, the General Partner or the Liquidating Agent, as the case may be, shall distribute to the Partners all funds collected on account of a liquidation of any asset of the Partnership during the preceding calendar month.

**Section 7.02.**  **Distributions Upon Termination**.  As soon as practicable after the effective date of any dissolution of the Partnership, whether by expiration of its full term or otherwise, the assets of the Partnership shall be distributed in the following manner and order:

(a)  The claims of all creditors of the Partnership who are not Partners shall be paid and discharged;

(b)  The claims of all creditors of the Partnership who are Partners shall be paid and discharged; and

(c)  The Partners shall share in the remaining assets of the Partnership, and any income, gain or loss arising during the winding up in the relative proportions that their respective Capital Accounts bear to each other.

Notwithstanding anything to the contrary contained in this Section 7.02, the General Partner or Liquidating Agent, as the case may be, may establish a reasonable reserve to pay all claims and obligations, including all contingent, conditional or unmatured claims and obligations, known to the Partnership and all claims and obligations which are known to the Partnership but for which the identity of the claimant is unknown, in accordance with Section 17-804 of the Partnership Act.

**Section 7.03.**  **Transfer of a Limited Partner's Interest; Withdrawal of a Limited Partner**.

(a)  Except as otherwise provided in this Agreement, during the term of this Agreement, no Limited Partner, directly or indirectly, shall withdraw from the Partnership nor shall any Limited Partner sell, assign, mortgage, hypothecate, transfer, pledge, create a security interest in or lien upon, encumber, give, place in trust, or otherwise voluntarily or involuntarily dispose of any interest in the Partnership (each such transaction a "Disposition"), now owned or hereafter acquired by any Limited Partner.

14

(b)  Notwithstanding the provisions of this Section 7.03, upon written consent of the General Partner, which consent may be granted or withheld in the sole discretion of the General Partner, a Limited Partner may, on the first day of any month, transfer any or all of the interest owned by it for no consideration or at a price to be determined in the sole discretion of the Limited Partner.  Requests for the consent of the General Partner to a transfer of any interest pursuant to this Section 7.03 must be in writing and delivered to the General Partner not less than thirty (30) days before the end of the fiscal year preceding the date of such transfer.

(c)  In connection with any transfer of a Limited Partner's interest in the Partnership, the transferring Limited Partner shall, upon request of the General Partner, provide a written opinion of counsel (who shall be reasonably satisfactory to the General Partner and its counsel), that such transfer will not result in a violation of any applicable laws including, but not limited to, U.S., state or federal securities laws.  The General Partner may, in its sole discretion, as a condition of its consent to a transfer, require a Limited Partner to guarantee the performance of its transferee.  Each Limited Partner will be required to take such action and furnish such certificates, instruments and other legal opinions as may be reasonably requested by the General Partner as provided in this Partnership Agreement.

**Section 7.04.      Limitations on Transfer.**  A Limited Partner may not transfer a Partnership interest if such transfer would:

(a)  result in the termination of the Partnership for federal income tax purposes;

(b)  cause the Partnership to be treated as an association taxable as a corporation for federal income tax purposes;

(c)  violate any applicable federal or state securities laws, rules or regulations;

(d)  require the General Partner or the Partnership to register as an "investment company" as defined in the ICA; or

(e)  cause the assets of the Partnership to be deemed "plan assets" within the meaning of ERISA.

## ARTICLE VIII

### Reports to Partners

**Section 8.01.      Independent Auditors.**  The books of account and records of the Partnership shall be audited as of the end of each fiscal year by an independent certified public accountant (the "Accountant"), to be selected in the absolute discretion of the General Partner.

**Section 8.02.      Reports to Current Partners.**

(a)  Coincident with the completion of the Partnership's annual audit, the General Partner shall cause the Accountant to prepare and mail to each Partner then a member of the Partnership a report, setting forth as of the end of each fiscal year:

(i)      The balance sheet of the Partnership;

(ii)     The net operating profits or losses of the Partnership for such fiscal year;

15

(iii)    The net realized and unrealized capital gains or losses for such fiscal year; and

(iv)    Such Partner's closing Capital Account as of the end of such fiscal year.

(b)  The General Partner shall prepare and transmit to current Partners, within approximately forty-five (45) days after the end of any fiscal quarter, other than a fiscal quarter ending concurrently with the Partnership's fiscal year end, a report containing such information relating to the financial position and results of operations of the Partnership for the quarter then ended as the General Partner deems necessary or appropriate.

**Section 8.03.**    **Reports to Current and Former Partners.**  Promptly after the completion of the Partnership's year-end audit, the Accountant shall prepare and mail to each Partner then a member of the Partnership and to each other person who was a Partner during such fiscal year (or his legal representatives) to the extent necessary, a copy of Schedule K-1 to the Partnership's federal income tax return in a form sufficient to enable such Partner to determine for federal income tax purposes, his share of all items of Partnership income, gain, loss, deduction and credit.  In addition, each Limited Partner withdrawing all or any portion of his Capital Account hereunder shall receive, concurrently with his receipt of any portion of such withdrawn funds a statement detailing the manner of calculation of the amount of such funds.

## ARTICLE IX

### Miscellaneous

**Section 9.01.**    **General.**  This Agreement; (i) shall be binding on the executors, administrators, estates, heirs, and legal successors and permitted assigns of the Partners; (ii) shall be governed by, and construed in accordance with, the laws of the State of Delaware; and (iii) may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart; provided, however, that (x) each separate counterpart shall have been executed by the General Partner and (y) that the several counterparts, in the aggregate, shall have been signed by all of the Partners.

**Section 9.02.**    **Power of Attorney.**  Each Limited Partner hereby irrevocably constitutes and appoints the General Partner (and its appropriate officers holding office from time to time), and in the absence of any such General Partner, a Person designated as Liquidating Agent, as his true and lawful attorney-in-fact, in his name, place and stead, to make, execute, acknowledge and/or file with the appropriate authority and/or attach to this Agreement:

(a)  Any certificates including, without limitation, a Certificate of Limited Partnership and other instruments which may be required to be filed by the Partnership under the laws of the State of Delaware or any other governmental authority having jurisdiction, or which the General Partner, in its absolute discretion, shall deem necessary or advisable to file;

(b)  Any certificate or other instruments amending or modifying the Certificate of Limited Partnership of the Partnership to evidence any changes in such Certificate provided for herein;

(c)  Any certificates or other instruments which may be required to effect the dissolution and termination of the Partnership and/or the cancellation of the Certificate of Limited Partnership of the Partnership;

16

(d)  Subject to Section 9.03, any amendment to this Agreement which the General Partner is authorized to make in accordance with the provisions of this Agreement;

(e)  Any documents required in connection with brokerage or other accounts of the Partnership; and

(f)  The Schedule; it being expressly understood and intended by each Limited Partner that such powers of attorney are coupled with an interest.  The foregoing powers of attorney shall be irrevocable and shall survive the death, disability or legal incapacity of a Limited Partner and any assignment of the whole or any part of the interest in the Partnership of a Limited Partner, and shall be binding upon the assignee thereof.

**Section 9.03.**      **Amendments to Partnership Agreement**.  The terms and provisions of this Agreement may be modified or amended at any time and from time to time (x) with the written consent of (i) Limited Partners having in excess of 50% of the interests in the Partnership, and (ii) the written consent of the General Partner, insofar as is consistent with the laws governing this Agreement, or (y) by the General Partner to amend or modify this Agreement in any manner which does not adversely affect the rights or interests of any Limited Partner hereunder; provided, however, that no modification or amendment to this Agreement shall (i) reduce the Capital Account of any Partner or his rights of contribution or withdrawal with respect thereto; (ii) modify the allocations pursuant to Section 3.07; or (iii) amend this Section 9.03, without the written consent of each Limited Partner affected thereby.

**Section 9.04.**      **Notices**.  Each notice relating to this Agreement shall be in writing and delivered in person (during normal business hours), by registered or certified mail or overnight courier.  All notices to the Partnership shall be addressed to its principal office and place of business.  All notices addressed to a Partner shall be sent to the address set forth in the Schedule.  Any Partner may designate a new address by notice to that effect given to the Partnership.  Notice(s) shall be deemed given (i) if by registered or certified mail, 3 days after mailing (ii) or if by overnight courier, the day after delivery to such courier service to the proper address or (iii) if delivered in person, the day of delivery.

**Section 9.05.**      **Compliance with the Rules of Fair Practice of the National Association of Securities Dealers**.  Upon the request of the General Partner, each Limited Partner shall provide the General Partner with information regarding the occupation of the Limited Partner, and such other information as may be required for the Partnership to comply with Rule 2790 of the Conduct Rules ("2790 Rules") as promulgated by the National Association of Securities Dealers ("NASD").  If any Limited Partner is itself a partnership, it shall provide this information with respect to each of its partners.  If, by virtue of the 2790 Rules, a Partner (a "Restricted Partner") is prohibited from purchasing certain securities ("New Issues"), and the Partnership chooses to invest in such securities, such Restricted Partner shall not share in the profits or losses resulting from the prohibited investment.  Without limiting the generality of the foregoing, if there are any Restricted Partners in the Partnership, all investments in New Issues shall be held by the Partnership in a segregated account, and all gains and losses relating thereto shall be credited to or debited from such segregated account, in which no Restricted Partner shall have an interest.  In the event that the status of any Limited Partner changes so that such Partner shall become a Restricted Partner, such Partner shall immediately notify the General Partner.  The General Partner shall, in its sole discretion, thereupon have the right to cause such Restricted Partner to transfer its entire investment in the Partnership into a second limited partnership (the "Restricted Partnership") of which the General Partner is the general partner.  The Partnership and the Restricted Partnership shall be identical in all respects, except that the Partnership shall be permitted to invest in New Issues and the Restricted Partnership shall not be permitted to invest in New Issues.  Except for investments in New Issues, all investments by the Partnership and the Restricted Partnership will be commingled and on a pari passu

17

basis. The foregoing authority to transfer a Restricted Partner to the Restricted Partnership includes, without limitation, authority to execute and deliver the limited partnership agreement of the Restricted Partnership and any requisite certificates on behalf of the Restricted Partners pursuant to the power of attorney granted in Section 9.02 of this Agreement and to file a certificate of limited partnership in Delaware and a qualification to do business as a foreign limited partnership in any requisite jurisdiction, without any further action on the part of the Limited Partners.

**Section 9.06.    Tax Matters Partner**.

(a)  For purposes of Section 6231(a)(7) of the Code or any corresponding provision of any future law of the same or similar import, the "Tax Matters Partner" of the Partnership shall be the General Partner.

(b)  The Tax Matters Partner shall be authorized to carry out, on behalf of the Partnership and at the Partnership's expense, all acts appropriate to such designation, including, without limitation:

(i)    Receiving and responding to any and all notices and requests from any taxing authority;

(ii)    Informing all other Partners of any inquiry, examination or proceeding as required by law and, if not so required, as the Tax Matters Partner shall deem appropriate;

(iii)    Meeting and negotiating with representatives of any taxing authority;

(iv)    Entering into a binding settlement agreement with any taxing authority on behalf of all or some of the Partners regarding any tax adjustment, assessment, credit or refund, provided that all Partners be given adequate prior notice so that any Partner may, without prejudicing the validity of any such settlement agreement, elect not to be bound by the settlement agreement where permitted under applicable law;

(v)    Entering into an agreement with any taxing authority to extend any limitations period on the assessment or collection of adjustments;

(vi)    Commencing administrative or judicial proceedings regarding any tax adjustment, assessment, credit or refund;

(vii)    Intervening in any judicial action or proceeding, the outcome of which could adversely affect a position taken by the Partnership;

(viii)    Prosecuting an appeal from a decision or judgment of any court which is wholly or partially adverse to a position taken by the Partnership; and

(ix)    Retaining tax advisors to whom the Tax Matters Partner may delegate such of his rights and duties as the Tax Matters Partner shall consider necessary and appropriate.

(c)  The Tax Matters Partner shall be required to notify Partners who do not qualify as "notice partners" within the meaning of Section 6231(a)(8) of the Code of the beginning and completion of an administrative proceeding at the Partnership level promptly upon such notice being received by the Tax Matters Partner. The Tax Matters Partner shall have no duty to render such a notification to "indirect partners" (as defined in Section 6231(a)(10) of the Code) of the Partnership.

18

(d)  Each person (for purposes of this Section 9.06 called a "Pass-Thru Partner") that holds or controls an interest as a Limited Partner on behalf of, or for the benefit of another person or persons, or which Pass-Thru Partner is beneficially owned (directly or indirectly) by another person or persons shall, within 30 days following receipt from the Tax Matters Partner of any notice, demand request for information or similar document, convey such notice or other document in writing to all holders of beneficial interests in the Partnership holding such interests through such Pass-Thru Partner.

**Section 9.07.**    **Entire Agreement**.  This Agreement sets forth the entire understanding of all the parties hereto and no provision hereof shall be amended, waived or modified at any time except that the General Partner, without requiring the consent of any Limited Partner, may amend the Schedule in accordance with Section 2.01(c) to reflect the changes described therein and may make any amendments to this Agreement which are permitted by Section 9.03.

**Section 9.08.**    **Further Information and Documents**.  Each Limited Partner hereby undertakes to furnish to the General Partner such additional information as may be deemed required or appropriate by the General Partner so that the Partnership may maintain an account or accounts with securities or commodity brokerage firms and to execute and deliver such other statements of interest and holdings, powers of attorney and other instruments as the General Partner deems necessary; provided, however, the same are not inconsistent with the terms and provisions of this Agreement and do not increase the liabilities or obligation of such Limited Partner beyond that provided for in this Agreement.

**Section 9.09.**    **Gender**.  Where the context so requires, the masculine gender shall be construed to include the feminine, a corporation, a trust or other entity, and the singular shall be construed to include the plural and the plural of the singular.

**Section 9.10.**    **Captions**.  Captions and headings to the various sections of this Agreement are for convenience only and carry no legal effect and shall in no way affect the legal interpretation or construction of the sections of this Agreement.

**IN WITNESS WHEREOF,** the undersigned has hereto set his hand and seal as of the date first above written.

**GENERAL PARTNER:**

**FAMILY MANAGEMENT CORPORATION**

By:    /s/ Seymour W. Zises
     Name:      Seymour W. Zises
     Title:       President

19

## LIMITED PARTNER

Dated _____, 20___.

### SIGNATURE PAGE FOR
### FM MULTI-STRATEGY INVESTMENT FUND, L.P.
### LIMITED PARTNERSHIP AGREEMENT

      The undersigned, subject to acceptance by the General Partner, hereby becomes a Limited Partner pursuant to the Amended and Restated Limited Partnership Agreement of FM Multi-Strategy Investment Fund, L.P. and hereby agrees to all of the terms of said agreement and agrees to be bound by the terms and provisions thereof, hereby ratifying and approving all actions heretofore taken by the General Partner in respect of the Partnership.

(Partnership, Corporation, Trust or Qualified Plan Signature)

(Individual Signatures)

_____

Name of Entity (Print)

By:_____

    Signature

_____

    Name (Print)

_____

    Title

Home Address:

_____

Street

_____

City      State   Zip Code

Send Notices to (Check One):

Home Address: ___ Business Address: ___

Amount of Capital Contribution:

_____

Printed Name (First, Middle, Last)

By:_____

    Signature

_____

    Social Security or Taxpayer
    Identification Number

Business Address:

_____

Street

_____

City      State   Zip Code

_____

December 2006

**(JOINT PURCHASERS SHOULD COMPLETE THE FOLLOWING)**

Joint Purchasers, if any:

_____                    _____
Printed Name (First, Middle, Last)                  Signature

_____                    _____
Legal Form of Ownership                             Social Security Number

Home Address:                                       Business Address:

_____                    _____
Street                                                        Street

_____                    _____
City        State    Zip Code                       City        State    Zip Code

Send Notices to (Check One):

Home Address: ____    Business Address: ____

December 2006

**ACCEPTED:**

**FM MULTI-STRATEGY INVESTMENT FUND, L.P.**

**By: Family Management Corporation, its General Partner**

By: _____

SCHEDULE A

to Limited Partnership Agreement
of FM Multi-Strategy Investment Fund, L.P.

Dated as of

_____, 20___

PART I

The name and address of the General Partner is as follows:

Name                                   Address

Family Management Corporation          485 Madison Avenue - 19th Floor
                                       New York, New York 10022

PART II

The names, addresses and Capital Contributions of the Limited Partners are as follows:

Name and Address                       Capital Contribution

Provided upon request.

Memorandum Number ____
Issued To _____

December 2006